Fleming A. CAREY, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–1446.

District of Columbia Court of Appeals.

Argued April 8, 1994.

Decided June 1, 1994.*

---

* The decision in this case was originally issued as an unpublished memorandum opinion and judg-

ment. It is now being published, with minor revisions, by direction of the court.

Douglas F. Gansler, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Bruce L. Delaplaine, and Helene Kazanjian, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, STEADMAN and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Fleming Carey, ("Carey") was convicted of second degree murder while armed, D.C.Code §§ 22–2403, –3202 (1989 & 1994 Supp.), carrying a pistol without a license, id. § 22–3204(a) (1994 Supp.), and two counts of malicious destruction of property (misdemeanor), id. § 22–403 (1989 & 1994 Supp.). On appeal, Carey contends that the trial court erred in admitting the prior out-of-court statement of a government witness because (1) the statement did not qualify as a past recollection recorded; (2) the statement was inherently unreliable; (3) the admission of the statement violated appellant's Sixth Amendment rights; and (4) the admission of the statement violated the rule against admission of prior consistent statements. Carey also argues that the trial court abused its discretion by giving an anti-deadlock instruction which resulted in a coerced verdict. Finding appellant's arguments unpersuasive, we affirm.[1]

## I.

Appellant argues that the trial court erred by permitting the government to read at trial the grand jury testimony of witness Natashia Weaver ("Weaver"). Weaver was an eyewitness to the murder of decedent, Kenny Brown ("Brown") and made a statement to the police the night of the murder, identifying appellant as the shooter. When Weaver testified before the grand jury, her statement to the police was read, and she affirmed that it was true. At appellant's trial, however,

W. Gary Kohlman, Washington, DC, for appellant.

1. This court previously granted appellant's motion for a remand permitting him to augment the record with information relating to the filing of the notice of appeal. We received an order from the trial judge stating that based on "the testimony, exhibits and representations at a November 17, 1993 evidentiary hearing, this Court finds that the defendant Fleming Carey did file a timely notice of appeal on October 30, 1990." That ruling by the trial court has not been challenged on appeal.

Weaver testified that she could not remember what happened the night of the murder. She stated that she did remember making a statement to the police that night and testifying before the grand jury, but could not recall the substantive content of her statement. The prosecutor showed Weaver a copy of her grand jury testimony, but his efforts to refresh Weaver's recollection of the events on the night of the murder were unavailing.

The prosecutor then requested to read that portion of Weaver's grand jury testimony containing her statement to the police. Defense counsel objected on the ground that Weaver's statement was not subject to cross-examination, thus violating appellant's Sixth Amendment right to confrontation.[2] After several conferences with counsel for all parties, the trial judge permitted the government to read that portion of Weaver's grand jury testimony incorporating her police statement to the jury as a past recollection recorded because he found that appellant's trial counsel could effectively cross-examine Weaver at least to the extent constitutionally required.

A prior out-of-court statement is admissible as a past recollection recorded if the following four criteria are established:

(1) the witness must have had first-hand knowledge of the event;

(2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it;

(3) the witness must lack a present recollection of the event; and

(4) the witness must vouch for the accuracy of the written memorandum.

*Mitchell v. United States*, 368 A.2d 514, 517–18 (D.C.1977) (per curiam) (citation and internal quotation marks omitted).

The record supports the trial court's finding that all four criteria were met here. First, Weaver was an eyewitness to the murder, and she made a statement to the police the night of the murder in which she identified appellant as the man who chased the decedent to his car and fired shots into the car, killing decedent. Second, Weaver's police statement was made the night of the murder while the details of the event were still clear and fresh in her mind. Third, Weaver testified at trial that she had no present memory of the events, and her memory was not refreshed by reviewing her grand jury testimony or her police statement. Fourth, Weaver testified at trial that the statement she gave to the police was accurate and that she testified truthfully at the grand jury proceeding. As all four elements for admission of past recollection recorded have been met, we conclude that the admission of Weaver's police statement through her grand jury testimony was not an abuse of discretion.[3]

## II.

Appellant next contends that Weaver's statement was inherently unreliable. Appellant argues that because Weaver tested positive for PCP after the first day of testimony, her testimony should have been stricken from the record. The trial judge, however, denied appellant's motion to strike the testimony because he "didn't observe anything about her testimony or manner that led [him] to believe that she was incompetent to testify."

---

2. Our review of the trial transcript indicates that appellant's trial counsel did not object to the reading of Weaver's grand jury testimony on the ground that it did not qualify as a past recollection recorded, but rather on the ground that appellant was deprived of his Sixth Amendment right to cross-examination. On appeal, however, appellant also argues that the statement read to the jury did not qualify as a past recollection recorded. Since this latter argument is raised for the first time on appeal, our review is for plain error. *See Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc).

3. At oral argument, the government conceded that the grand jury testimony should not have come in as a past recollection recorded, but argued that the error was nonetheless harmless because the police statement contained in the grand jury testimony did qualify as a past recollection recorded and was therefore admissible. We agree that the police statement did satisfy all four *Mitchell* criteria for past recollection recorded and therefore hold that the error of reading Weaver's grand jury testimony, instead of her police statement to the jury, was harmless.

"In assessing the competency of a witness, a trial judge must evaluate the ability to accurately perceive, recall, and relate purported facts, as well as testify truthfully." *Vereen v. United States,* 587 A.2d 456, 457 (D.C.1991) (per curiam). A determination of Weaver's competency was within the sound discretion of the trial judge, and we will not disturb the judge's factual determination unless it is "plainly deficient." *Galindo v. United States,* 630 A.2d 202, 206 (D.C.1993). We conclude that the record supports the trial judge's denial of appellant's motion to strike Weaver's testimony. The fact that appellant may have been under the influence of drugs at the time of her testimony at appellant's trial does not render her prior police statement unreliable. There is no evidence in the record indicating that she was under the influence of any controlled substance when she made her statement to the police on the night of the murder or when she testified before the grand jury. Thus, the statement itself is not inherently unreliable.

### III.

■ Appellant also argues that the admission of Weaver's police statement through her grand jury testimony violated his Sixth Amendment right to confrontation. Appellant contends that Weaver's testimony was unimpeachable because of her memory loss, and therefore she could not be cross-examined about the factual surroundings of the hearsay testimony. Thus, he argues, his cross-examination rights were totally curtailed as to both the crime and the circumstances of the hearsay statement.

Appellant's Sixth Amendment confrontation rights were not violated by reading Weaver's police statement, contained in her grand jury testimony, to the jury. In *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the Supreme Court held that the admission of a prior, out-of-court identification statement of a witness who was unable, because of memory loss, to explain the basis for the identification, did not violate the confrontation clause of the Sixth Amendment. "[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 559, 108 S.Ct. at 842 (citations and internal quotation marks omitted). Weaver was available for cross-examination by appellant's trial counsel. Indeed, he did cross-examine her at trial about her failure to remember the events on the night of the murder. "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." *Id.* at 560, 108 S.Ct. at 843. Though appellant's trial counsel may not have been able to cross-examine Weaver as effectively as he would have liked, our review of the record reveals nothing giving rise to a deprivation of appellant's constitutional right to confrontation. Accordingly, we hold that the admission of Weaver's police statement through her grand jury testimony did not violate appellant's Sixth Amendment rights.

### IV.

Appellant's final contention regarding Weaver's testimony is that it violated the rule against admission of prior consistent statements. Appellant argues that the trial judge allowed the prosecution to introduce both Weaver's statement to the police and her testimony before the grand jury. This argument is also raised for the first time on appeal, and thus we review for plain error. *See Watts, supra,* 362 A.2d at 709.

■ The rule against admission of prior consistent statements was not violated by the trial court. The prosecutor read Weaver's grand jury testimony incorporating her statement to the police.[4] Thus, the substance of Weaver's statement to the police was read only once to the jury. Two separate statements describing the events the

4. We recognize that Weaver's police statement contained within her grand jury testimony can be characterized as hearsay within hearsay. Because appellant's trial counsel did not raise this contention at trial or on appeal, we will not consider the issue. *Georgetown College v. Diavatis,* 470 A.2d 1248, 1251 (D.C.1983).

night of the murder were never read to the jury, thus the rule against prior consistent statements is inapplicable here. Moreover, Weaver's testimony, "consisting solely of descriptions or identifications of the ... assailant[,] are admissible as substantive evidence under the hearsay exception for prior description testimony." *Warren v. United States*, 436 A.2d 821, 837 (D.C.1981) (citation omitted). Consequently, we find no error here.[5]

## V.

■ Appellant's final contention is that the trial judge, in response to notes from the jury, gave two anti-deadlock instructions which resulted in a coerced verdict. The government, on the other hand, argues that the trial court did not give two anti-deadlock charges. It contends, rather, that the trial court responded to the first note by instructing the jury to deliberate further and responded to the subsequent note with an appropriate anti-deadlock instruction. We agree with the government's position.

After deliberating for approximately five hours, the jury sent a note to the court stating, "We are unable to reach a unanimous decision. It appears that everyone feels very strongly, but are of different opinions. We are asking for your advice." In response to that note, the trial judge spoke with both the prosecutor and trial counsel for appellant about the propriety of giving a *Winters*[6] instruction and concluded that he would not give a *Winters* instruction to the jury in response to this first note. The trial judge stated, "I think it is appropriate in view of the limited deliberation time here to respond

to this note by just asking the jury to deliberate further." The trial court then charged the jury as follows:

Your note ... indicates that the jury is unable to reach a unanimous decision; that everyone appears to feel strongly, but there are differing opinions and you asked my advice. I think the advice I am going to give you at this time is this:

This is a long trial. It was certainly longer than most of the trials we have in this courthouse. There were a fair number of witnesses, and a fair amount of evidence, and I would expect that it would take some time to reach a resolution of this matter. And my best judgment is that I think you have been deliberating a total of maybe five to six hours, which is not unusual. And I am going to ask that you deliberate further in this case and continue to give this case your best efforts.

And you may resume your deliberations at this time. Thank You.

This instruction did not constitute a *Winters* charge, but merely encouraged the jurors to continue to deliberate.

Later that afternoon, the court received another note from a single juror stating, "Your Honor, some of us are ready to change our opinion just to get out of this room. Is this what you want? Is this perjury? What sort of heroism do you expect?" In response to this note, the trial judge told the jury that he did not want any juror to change his or her opinion merely to get out of the jury room. He then excused the jury for the evening. The following morning, the trial judge then gave a *Winters* anti-deadlock charge to the jurors.[7]

---

5. Even assuming error by the trial judge, the error would be harmless in light of the testimony of two other eye witnesses to the murder who identified appellant as the man who shot the decedent.

6. *Winters v. United States*, 317 A.2d 530 (D.C. 1974).

7. The trial judge instructed the jury as follows:

It is your duty as jurors to consult with one another, to deliberate with the view to reaching an agreement if you can do so without sacrificing your individual judgment. Each of you must decide this case for yourself. As I

have told you earlier, you should do so only after impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, you should not hesitate to reexamine your own views and the reasons for your views and to change your opinion if you become convinced that it's wrong. But don't surrender your honest conviction as to the weight or the effect of the evidence only because of the opinion of your fellow jurors only for the purpose of returning a verdict.

Now, remember that you are you [sic] not advocates for either side in this case, as I have already told you. You are judges, you are judges of the facts. And your sole interest in

This Court has approved, as within the discretion of the trial court, the use of anti-deadlock instructions. *See Winters, supra,* 317 A.2d at 533–34. "On appeal, the court's ruling and an ensuing verdict may be overturned only if, from all the surrounding circumstances, it appears the *Winters* charge was coercive." *Coleman v. United States,* 515 A.2d 439, 453 (D.C.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987). Here, the court's decision to give the *Winters* charge was well within its discretion, and there is nothing in the record to indicate that. the verdict was coerced. The jurors deliberated for several hours after receiving the anti-deadlock instruction before returning a verdict. *See Nelson v. United States,* 378 A.2d 657, 661 (D.C.1977) (effect of anti-deadlock charge attenuated because jury deliberated for several hours after receiving charge before it returned a verdict). Furthermore, the trial judge gave only one anti-deadlock charge to the jury. *Cf. Epperson v. United States,* 495 A.2d 1170 (D.C.1985) (it is error for a trial judge to repeatedly give an anti-deadlock instruction to a hung jury after it has already been given one anti-deadlock instruction). Thus, we find no abuse of discretion in the trial court's decision to give a *Winters* instruction.

Accordingly, the judgments of conviction appealed from are

*Affirmed.*

this case is to find the truth from the evidence in the case.

Okay. I am going to ask you to resume your deliberations at that time [sic] in light of what I have just told you. Thank you.