Lorenzo PICKETT, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–945.

District of Columbia Court of Appeals.

Argued April 9, 2003.

Decided May 1, 2003.

Michael Z.C. Okpala for appellant.

Ann M. Carroll, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Thomas J. Tourish, Jr., Assis-

tant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

After a bench trial appellant was found guilty of two counts of committing lewd, indecent, or obscene acts and one count of misdemeanor sexual abuse,[1] all arising from conduct directed to the child A.T. during the period from April through December of 1998. At the time, A.T. was at most ten years old and lived with her mother and siblings; appellant lived with them and shared a bedroom with the mother. The trial judge found that on two occasions during this period appellant committed indecent acts in the presence of the child and, on one occasion, engaged in sexual abuse *via* the statutory "sexual contact" of placing his mouth against her buttocks.

The sole issue warranting publication is appellant's contention that the trial court erroneously considered as evidence statements A.T. had made on videotape to a woman at the Children's Advocacy Center in April of 1999 describing appellant's sexual actions toward her, and similar statements she had made in a letter written (but not delivered) to her aunt several months earlier. The court ruled the contents of both statements admissible under the hearsay exception for past recollection recorded.

## I.

■ For a witness's out-of-court statement to be admissible under that exception:

(1) the witness must have had first-hand knowledge of the event;

(2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it;

(3) the witness must lack a present recollection of the event; and

(4) the witness must vouch for the accuracy of the written memorandum.

*Carey v. United States,* 647 A.2d 56, 58 (D.C.1994), citing *Mitchell v. United States,* 368 A.2d 514, 517–18 (D.C.1977). At bottom, appellant challenges only the trial court's finding that the fourth requirement was met;[2] he argues that A.T. in fact "repudiated" the prior statements at trial or, at the least, was so equivocal about their truth that she cannot be said to have vouched for their accuracy.

■ This court reviews a "trial court's [evidentiary] ruling[s] for abuse of discretion and will reverse only if the exercise of discretion is clearly erroneous." *Malloy v. United States,* 797 A.2d 687, 690 (D.C. 2002) (excited utterance). Interpreting

---

1. *See* D.C.Code §§ 22–1312, –3006 (2001).

2. Appellant also suggests, unpersuasively, that the letter and videotape were not made at or near the time of the alleged acts of lewdness and sexual abuse. Although the record is not entirely clear on the point, both recordings were made at a time not exceeding thirteen months from the *first* of a series of sexual acts by appellant that were alleged to have continued over a span of nine months. Given the nature of those acts, it is reasonable to infer, as the judge did, that a ten-year-old girl would

retain a fresh memory of them for that length of time. *See, e.g., Fowler v. Stanford,* 89 A.2d 885, 887–88 (D.C.1952) (fifteen month delay between event and recording; "[w]e think it cannot be said that the document here involved"—a schedule establishing the rent charged, "a simple [fact] ... about which the landlady could hardly have been mistaken"—"was made so far from the time of the original transaction as to cast serious doubt on its accuracy").

FED. R. EVID. 803(5) (Recorded Recollection), one federal appellate court has explained:

> Rule 803(5) does not specify any particular method of establishing the ... accuracy of the statement. It is not a *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration ... of factors indicating trustworthiness, or the lack thereof.

*United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir.1993). *See also State v. Marcy*, 165 Vt. 89, 680 A.2d 76, 79–80 (1996) (adopting *Porter's* reasoning); *State v. Alvarado*, 89 Wash.App. 543, 949 P.2d 831, 836 (1998). A leading commentator, while agreeing that no particular method of proving accuracy is required, would still require that "the witness ... acknowledge at trial the accuracy of the statement," but goes on to recognize that "[c]ourts have been relatively liberal in finding that the witness has acknowledged the accuracy of a prior statement, particularly where the witness is apparently *hostile or reluctant to testify* but does not repudiate the statement." 2 JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE § 283, at 246 (5th ed.1999) (emphasis added).

■ In keeping with our decisions in *Carey* and *Mitchell, supra*, we adhere to the rule that the witness must confirm the accuracy of the recorded statement, but we also agree that unless the witness has expressly repudiated it on the stand the trial judge may consider all of the circumstances in finding the requisite confirma-

tion, including the demeanor of the witness in court—evincing, for example, hostility or reluctance to testify—as well as the conditions under which the out-of-court statement was made. *See Marcy*, 680 A.2d at 79 (considering circumstances under which tape-recorded statement to police was made in upholding finding that the statement "correctly reflect[ed] [the witness's] knowledge of the assault at the time it was made"; and noting that she had not recanted it).

## II.

■ Judge Gardner ruled consistently with these standards in admitting the contents of A.T.'s videotaped statement and letter. Before doing so, he established that she could only partially recall the events in dispute[3] and that, as to the remainder, her memory could not be refreshed by watching the videotape, which she did. He then allowed her to be questioned about whether her statements in the taped interview and the letter were truthful. Her answers on cross-examination were at first unequivocal:

Q. So you're saying what was on the video—

A. What was on the video was true.

Q. When you said it on the video?

A. Yes.

Q. It wasn't true?

A. I said it was true.

\* \* \* \* \* \*

Q. You also said that it's not true, what you said on the video, that didn't happen.[4]

A. It did happen.

---

**3.** A.T. was able to testify that on occasions when her mother was at work, appellant would come into her bedroom and pick her up and take her into his bedroom, where she would awake later in her underwear and then try to run out of the room. She also recalled appellant "humping" on her, by which she

meant that "[t]here were times [when he was] on top of me" wearing his shirt and boxer shorts.

**4.** Defense counsel here was referring to a conversation A.T. had had with a prosecutor outside the courtroom in which she had pur-

A.T. later equivocated by denying—contrary to her recorded statements—that appellant had touched "any of [her] private parts," and agreed with defense counsel that she had told the prosecutor outside the courtroom (see note 4, *supra*) that what she said on the videotape "was not true." But on redirect examination she acknowledged her earlier testimony that her taped statements were "correct," stating that she had meant by this "[t]hat it was true."[5]

The trial judge found that A.T.'s testimony was at most equivocal in recanting her former statements, inasmuch as "she never wavered," for example, "from the proposition of [his] trying to take [her] underwear down," but appeared to recant other portions. More importantly, the judge explained at length that he did not believe A.T.'s recantation because her demeanor on the stand revealed to him a child "under some compulsion to say something other than the truth," a "pensive[ness]" and "extreme anxiety" signifying that she was "under some kind of pressure" to disavow her former statements. And he contrasted this with her relatively relaxed and forthright demeanor on the videotape and the circumstances generally supporting the truthfulness of the contemporaneous statements, see note 2, *supra*, before crediting the latter. Appellant argues that the judge could not fairly determine the child was under "pressure" to change her story without extrinsic evidence that the mother or someone else had sought to coerce or influence her testimony; but he cites no authority for the point. Unquestionably a jury may draw inferences about credibility from a witness's manner of testifying,[6] including her reluctance to repeat or admit facts she has previously reported, and no reason precludes the judge from doing likewise in deciding an issue of admissibility resting on which of several utterances by the witness to believe.

In sum, the trial judge did not abuse his discretion in considering the contents of the videotape and letter. This being so, we reject as well appellant's argument that the evidence was insufficient to support his convictions. Even without the recorded recollections, A.T. gave substantial testimony supporting the charges of indecent acts. See note 3, *supra; District of Columbia v. Garcia,* 335 A.2d 217, 219–21 (D.C.1975). The videotape and letter corroborated that testimony and furnished the requisite evidence of the charged misdemeanor sexual abuse for which appellant was convicted.

*Affirmed.*

---

portedly said that the accusations were "made up" in order to get appellant out of her mother's house.

**5.** As to the letter to her aunt, A.T. testified that "[a]bout half of it is true but half of it's not." The true part included her statement that appellant had sought to kiss her on one occasion "and ... was trying to pull my underwear down."

**6.** *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.11 (1993 ed.).