Antoine D. ISLER, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–1051.

District of Columbia Court of Appeals.

Argued May 6, 2003.

Decided May 29, 2003.

Joseph R. Conte, appointed by the court, for appellant.

Gilberto Guerrero, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Barbara J. Valltere, and Lynn C. Holliday, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL, REID and GLICKMAN, Associate Judges.

REID, Associate Judge:

Appellant Antoine Isler once again appeals his convictions for first-degree murder, in violation of D.C.Code § 22–2101 (2001); possession of a firearm during a crime of violence, in violation of § 22–4504(b); and carrying a pistol without a license, in violation of § 22–4504(a).[1] He challenges the trial court's ruling allowing the admission into evidence of excerpts from the grand jury testimony of two eyewitnesses; his challenge rests solely on the ground that he did not have an opportunity to cross-examine the two witnesses when they appeared before the grand jury. We affirm the judgment of the trial court, and hold that statements made by a witness before the grand jury are admissible into evidence under the past recollection recorded exception to the hearsay rule provided they meet the requirements for that exception. We further hold that the requirements were met in this case.

## FACTUAL SUMMARY

On August 30, 1993, Donald Brown was fatally shot in the Southeast quadrant of the District of Columbia. Three persons witnessed the shooting—Patricia Walden, Shanta Dews and Vandora Chappell, all of whom testified at Mr. Isler's second trial. Ms. Walden recounted the events of August 30, 1993, indicating that she and Mr. Brown planned to go out for the evening. When they exited the apartment building to get into Mr. Brown's car, she was on the passenger side of the car when she saw Mr. Isler. She "recognized his face and thought nothing of it, but once he got closer to [Mr.] Brown, [Mr. Isler] re-

peatedly shot, kept shooting .... He was shooting [Mr.] Brown."

Both Ms. Dews and Ms. Chappell acknowledged that they testified before the grand jury on January 25, 1994, but claimed that they could not remember what happened on August 30, 1993, nor what they said during their appearances before the grand jury. As a result of the witnesses' claims that they could not remember the incident nor what they said to the grand jury, the government moved to admit excerpts from the grand jury testimony as past recollection recorded.

The trial court declared that it would allow statements from the grand jury testimony to be admitted, saying in the case of Ms. Dews:

> I believe under the past recollection recorded [exception to the hearsay rule Ms. Dews] said those things and she has indicated in her testimony basically that she has insufficient memory now and that she once knew about what happened to [Mr. Brown]. And that's what those [statements] refer to. And so I believe under the hearsay exception of recorded recollection, the Government is able to read that portion of the transcript into the record.

Defense counsel explained why he had objected to the admission of statements from the grand jury testimony: "[T]he reason I'm objecting is because the witness currently doesn't remember. If the court [admits the statements], I will have no ability to cross-examine th[ose] statement[s] because what the witness is testifying now, is that [she] doesn't remember." The trial court responded: "Well, she testified at the first trial and you can ask her questions about things that are relevant to the defense based on the first trial. And if she

---

1. After Isler was convicted of all charges during his first trial, he filed an appeal with this court. We reversed his convictions on the ground that "the trial court erroneously cur- tailed [his] right of cross-examination," and that error was not constitutionally harmless. *Isler v. United States,* 731 A.2d 837, 841 (D.C. 1999) (*Isler I*).

doesn't remember, ... you will have the transcript of her testimony to go through...." The prosecutor then read the following excerpts from Ms. Dews' January 25, 1994, grand jury testimony:

QUESTION: "Do you remember what happened to Polo [Mr. Brown]. Did you see something happen to Polo on that date that I gave you, August 30th?"
ANSWER: "Yes."
QUESTION: "What happened to him?"
ANSWER: "He got shot."

The trial judge "accepted [these] statement[s] as evidence in the case." However, the judge indicated that the transcript of Ms. Dews' grand jury testimony would not be sent to the jury deliberation room at the end of the trial.

After the government read into evidence the excerpt from Ms. Dews' grand jury testimony showing that she remembered then that Mr. Brown "got shot" on August 30, 1993, defense counsel continued to press his objection as the government prepared to read statements from Ms. Dews' June 17, 1994, testimony at Mr. Isler's first trial, and to request that they be admitted as past recollection recorded.

Defense counsel took issue with the characterization of the statements as recorded recollection, and said: "I don't know that it is a recorded recollection. I think what it is is prior recorded testimony which is a different exception to the hearsay rule." The trial court reiterated that "the [g]overnment says it's seeking it as a recorded recollection and her recollection can't be refreshed .... [T]hey are not seeking the admissibility of the transcript because she's not available. She's here .... [T]his is a classic refreshing of recollection, past recorded recollection type situation." The government then read excerpts from Ms. Dews' June 17, 1994, trial testimony establishing that she recognized Mr. Isler as soon as she saw him on the night of the shooting, described what he was wearing, and that he shot Mr. Brown about twelve times but she did not "know how many times he hit him." [2]

## ANALYSIS

Citing *Feaster v. United States*, 631 A.2d 400 (D.C.1993) and *Alston v. United States*, 383 A.2d 307 (D.C.1978), Mr. Isler argues that the trial court improperly ad-

---

**2.** When Ms. Chappell testified, statements from page 19, lines 1–4 of her January 25, 1994, grand jury testimony were admitted into evidence (government exhibit 24). These statements showed that on August 30, 1993, she and Ms. Dews initially were outside the apartment building where Mr. Brown was shot. When asked whether she saw someone she knew before entering the building, Ms. Chappell said she did not remember. However, she acknowledged that she knew Mr. Isler on that date. The government then turned to exhibit 24, page 75. The June 2000 transcript is not clear as to whether exhibit 24 was from Ms. Chappell's grand jury or her first trial testimony. The trial court requested a bench conference and suggested that Ms. Chappell's testimony from the first trial be used pursuant to FED. R. EVID. 804, rather than through the past recollection recorded exception to the hearsay rule. After the bench conference, the prosecutor "ask[ed] to

publish lines 2–12[on] page 75." These lines indicated that Ms. Chappell previously testified that she recognized Mr. Isler on August 30th. The prosecutor posed further questions to Ms. Chappell, apparently still relying on recorded recollection to get into evidence certain excerpts from her June 17, 1994 trial testimony. The trial judge again suggested that the prosecutor read from the prior testimony rather than rely on the "piece-by-piece approach" and recorded recollection. Later, the government read page 19, lines 20–25 and page 20, lines 1–7 of Ms. Chappell's grand jury transcript to the jury. These lines established that Ms. Chappell had known Mr. Isler since he was "six years old" when they were in day care together. On cross-examination, defense counsel used the June 17, 1994, transcript of Ms. Chappell's prior testimony to try to impeach her, and asked that certain portions of the testimony be admitted into evidence.

mitted excerpts from the grand jury testimony of two government witnesses. The admission was improper, he asserts, because he did not have the opportunity to cross-examine the witnesses during their appearance before the grand jury.[3]

■ We review a " 'trial court's [evidentiary] rulings for abuse of discretion and will reverse only if the exercise of discretion is clearly erroneous." ' *Pickett v. United States,* No. 00–CF–945, 2003 WL 1989375, at *1, 2003 D.C.App. LEXIS 225, at *4 (D.C. May 1, 2003) (quoting *Malloy v. United States,* 797 A.2d 687, 690 (D.C. 2002)).

■ Although we have addressed previously the admission of a police statement through grand jury testimony, *see Carey v. United States,* 647 A.2d 56 (D.C.1994), and most recently, the admission of an extrajudicial statement made on videotape, *see Pickett, supra,* as past recollection recorded exceptions to the hearsay rule, we have not decided the precise issue concerning whether grand jury testimony is admissible under that exception. We now hold that statements made before a grand jury are admissible under the past recollection recorded exception to the hearsay rule if they meet the following requirements:

(1) the witness must have had first hand knowledge of the event,

(2) [the grand jury testimony must have been given] at or near the time of the event while the witness had a clear and accurate memory of it,

(3) the witness must lack a present recollection of the event, and

(4) the witness must vouch for the accuracy of the [grand jury testimony].

*See* MCCORMICK ON EVIDENCE § 279 (5th ed.1999); *Pickett, supra; Carey, supra; see also United States v. Smith,* 197 F.3d 225, 231 (6th Cir.1999).

■ All of the requirements are met in this case. Both Ms. Dews and Ms. Chappell had firsthand knowledge of the shooting of Mr. Brown by Mr. Isler because they witnessed it while looking out of the window of Ms. Dews' residence, and they testified consistently about the events of the shooting not only before the grand jury, but also at Mr. Isler's first trial. In addition, their testimony before the grand jury was consistent also with that of another eyewitness, Patricia Walden, whose testimony is not challenged by Mr. Isler.

The grand jury testimony was given approximately five months after Mr. Brown was shot, well within the range determined to be sufficient to establish that the testimony was made at a time when a person had a clear and accurate memory of the event. *See Pickett, supra,* 2003 WL 1989375, at *3, 2003 D.C.App. LEXIS 225, at *3 (videotape statements "made at a time not exceeding thirteen months from the *first* of a series of [criminal acts]" held admissible) (emphasis in original); *United States v. Smith,* 197 F.3d 225 (6th Cir. 1999) (admission of statement made approximately fifteen months after the event took place held not to be clearly erroneous). Furthermore, both Ms. Dews and Ms. Chappell repeatedly testified that they could not recall the incident nor their grand jury testimony.

■ With respect to the accuracy of the sworn grand jury testimony, we said in

---

3. Specifically, he contends that "since [he] did not have the opportunity to cross-examine Ms. Dews and Ms. Chappell in the grand jury, the 4th requirement [of FED. R. EVID. 804(b)] is not met and it was an error to allow the government to read portions of their grand jury testimony." As the government points out, the grand jury statements of Ms. Dews and Ms. Chappell that were read to the jury were not admitted as prior recorded testimony, but were admitted as past recorded recollection. *See* FED. R. EVID. 803(5). Therefore, *Feaster* and *Alston, supra,* are not controlling here.

*Pickett, supra:* "[W]e adhere to the rule that the witness must confirm the accuracy of the recorded statement, but we also agree that unless the witness has expressly repudiated it on the stand the trial judge may consider all of the circumstances in finding the requisite confirmation, including the demeanor of the witness in court—evincing, for example, hostility or reluctance to testify—as well as the conditions under which the ... statement was made." *Id.* 2003 WL 1989375, at *2, 2003 D.C. App. LEXIS 225, at *5. Here, Ms. Dews agreed that she "told the truth to the best of [her] ability" when she went before the grand jury where her statements were made under oath, and Ms. Chappell acknowledged that her testimony was given under oath. In addition, neither witness repudiated her grand jury testimony.

In sum, all of the requirements for admission of the grand jury statements as past recollection recorded were satisfied in this case. Significantly also, the trial judge admitted only certain of the sworn statements which Ms. Dews and Ms. Chappell made before the grand jury, and not their entire grand jury testimony. Under the circumstances, we see no abuse of discretion. *See Pickett, supra; Clayborne v. United States,* 751 A.2d 956, 963 (D.C. 2000) ("[An] exercise of judicial discretion will not be reversed unless it appears that it was exercised on grounds, or for reasons, clearly untenable or to an extent clearly unreasonable.").

Nevertheless, Mr. Isler contends that the admission of the grand jury testimony violated his constitutional right of confrontation because there was no cross-examination when Ms. Dews and Ms. Chappell made their statements to the grand jury. His contention cannot be sus-

tained. A similar argument was advanced in *Hatch v. Oklahoma,* 58 F.3d 1447 (10th Cir.1995), but the court rejected it, holding that "the use of [the] recorded recollection testimony did not violate the petitioner's rights under the Confrontation Clause [of the Constitution of the United States]." *Id.* at 1467; *see also Akins v. United States,* 679 A.2d 1017, 1030 (D.C.1996) ("The Confrontation Clause is only violated by the admission of incriminating evidence under a hearsay exception that is neither firmly-rooted nor reliability-based.") (citing *Ohio v. Roberts,* 448 U.S. 56, 66 n. 9, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *Hawaii v. Sua,* 92 Hawai'i 61, 987 P.2d 959, 969 (1999) ("Application of the exception for past recollection recorded ... 'does not involve any deprivation of the right of confrontation as the Sixth Amendment has been interpreted and construed.'") (quoting *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir.1965)).

There is no violation of the Confrontation Clause because Mr. Isler had the opportunity to cross-examine both Ms. Dews and Ms. Chappell. He had an opportunity to probe their assertions that they could not recall the shooting of Mr. Brown or what they said to the grand jury in 1994. *See United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) ("[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 559, 108 S.Ct. 838 (citations and internal quotation marks omitted)).

For the foregoing reasons, we affirm the judgment of the trial court.[4]

---

4. Mr. Isler makes three other arguments which we dispose of summarily. First, he

contends that the trial court erroneously ad-

mitted into evidence the 911 tape recording of Ms. Dews' call to the police on August 30, 1993, because the government failed to "lay a proper foundation" for its admission. Nevertheless, Mr. Isler recognizes in his brief the applicability of the spontaneous utterance exception to the hearsay rule. Before allowing the 911 tape to be played for the jury and after Ms. Dews identified the voice on the tape as hers, the trial court specifically asked defense counsel: "Is there going to be an objection of this being played to the jury . . . as substantive evidence? Defense counsel replied: "No, Your Honor." Therefore, we review this matter for plain error. We are satisfied that there was no plain error. *See Coates v. United States*, 705 A.2d 1100, 1104 (D.C.1998) (setting forth the plain error standard); *Malloy v. United States*, 797 A.2d 687, 689–90 (D.C.2002) (statement by witness to a crime admitted under the spontaneous utterance exception to the hearsay rule). Second, Mr. Isler claims that the trial court should have granted his motion to dismiss the case under the speedy trial doctrine since he was prejudiced by the demolition of the housing complex where Mr. Brown was shot. Mr.

Isler's second trial commenced within one year of the issuance this court's June 11, 1999, mandate in *Isler I, supra* and hence there is no presumption of prejudice. *See Graves v. United States*, 490 A.2d 1086, 1091 (D.C.1984) (en banc). Moreover, we are satisfied that the trial court properly denied Mr. Isler's motion to dismiss on speedy trial grounds. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Finally, Mr. Isler maintains that the trial court "should have declared a mistrial and called for a new venire" because a member of the venire said that Mr. Isler "looks guilty" and another member agreed. This contention is based on his claim of an improper communication involving two venire members and a member of the prosecution team. After interviewing the person who reported this incident, the trial court concluded that neither person became a member of the jury. The trial court took the proper steps to determine whether there was juror bias or prejudice to Mr. Isler, and found none. Consequently we discern no "clear abuse of discretion." *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 185 (D.C.1990).