COURT OF APPEALS OF VIRGINIA


Present: Judges McClanahan, Petty and Senior Judge Fitzpatrick
Argued at Alexandria, Virginia


WILBERT ABNEY, JR.

OPINION BY
v.      Record No. 1366-06-4                  JUDGE ELIZABETH A. McCLANAHAN
MARCH 4, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Kathleen H. MacKay, Judge

Dawn M. Butorac, Assistant Public Defender (Whitney E. Minter,
Assistant Public Defender; Office of the Public Defender, on
brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Robert F. McDonnell, Attorney General, on brief), for appellee.


A jury convicted Wilbert Abney, Jr., of first-degree murder (Code § 18.2-32). On

appeal, Abney contends the trial court committed reversible error in admitting certain evidence

in violation of the hearsay rule and/or his Sixth Amendment right to confront witnesses. For the

following reasons, we affirm Abney's conviction.

I. BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth, as

the prevailing party at trial. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786

(2003). That principle requires us to "discard the evidence of the accused in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250,

254, 584 S.E.2d 444, 446 (2003) (en banc) (internal quotation marks and citations omitted).

It is undisputed that Abney killed his wife, Mona, by strangling her with a belt wrapped around her neck. The issue at trial was whether Abney murdered her or killed her by accident.

Abney's wife was found dead in a hotel room in Fairfax County in January 1978. Her body was on the floor, unclothed from the waist down, with multiple abrasions on the neck. Police suspected her death was a homicide, involving sexual assault. Dr. James Beyer, a medical examiner, conducted an autopsy and concluded the cause of death was "asphyxiation secondary to strangulation (ligature)," as stated in his autopsy report. During the autopsy, Dr. Beyer took vaginal swabs from the victim, which revealed the presence of semen in the victim's vaginal area. At that time, however, DNA analysis on the semen (which would later be conducted and identify Abney as the donor) was not available to the police. Throughout this initial investigation, Abney represented to police that his wife had traveled alone to Fairfax County for an overnight shopping trip and that he was at their home in Richmond at the time of her death. He also claimed he had not engaged in sexual intercourse with his wife in several weeks due to her recent gynecological problems. Though Abney was a suspect, the police eventually closed the investigation of the case as an unsolved homicide.

Shortly after Mona's death, Abney filed a claim for benefits under a large life insurance policy on her. Abney had made an application for the policy less than two months prior to her death. When the insurance company refused to pay, Abney sued the company. The case was dismissed on the ground that the policy never went into effect due to questions regarding Mona's health in the application process. In defending the case, the company obtained an affidavit from L. Davis, who was Abney's girlfriend around the time of his wife's death. Davis' affidavit, which she executed in November 1978, set forth details of her relationship with Abney. She also testified about their relationship at a hearing in the case.

In 2004, twenty-six years after Mona's death, the cold case unit of the Fairfax County Police Department re-opened the homicide case. At that time, DNA analysis was available, and was conducted on both the semen sample that had been retained from the original investigation and a current buccal sample from Abney. The DNA analysis resulted in a match of the DNA profile of both samples.

During Abney's first meeting with Fairfax County Police Detectives Steven Milefsky and Robert Murphy, in September 2004, Abney stated he could not remember if he and his wife had engaged in sexual intercourse around the time of her death. In April 2005, the detectives met again with Abney and advised him of the results of the DNA analysis. He then finally admitted that he had sex with his wife shortly before her death and that he lied about it to the police during the initial investigation and during his testimony in the trial on his claim to the life insurance benefits. However, he still denied he had been in his wife's hotel room or had anything to do with her death.

Detectives Milefsky and Murphy then met with Abney in May 2005, at which time he admitted to killing his wife, but claimed it was an accident. According to Abney at this meeting, Mona called and asked him to come to her hotel room. When he arrived, she wanted to engage in "what [Abney] described as kinky sexual intercourse, that she would be choked while [they] were] having sex, and her preference was even further that she wanted him to be behind her" while engaged in the act. Abney also told the detectives that, because he was not able to use his hands to choke her when they had sexual intercourse in that manner, he choked her with his belt. In the past, she would "tap him on the leg if it got too tight." This time, however, "she just went limp" and died. Abney gave the same explanation for his wife's death during his testimony at trial, adding that they were engaged in what is known as "erotic asphyxiation" at the time of her death.

Abney was indicted on the charge of first-degree murder. His jury trial was in March 2006. The Commonwealth prosecuted its case against Abney on the theory that his motive for murdering his wife was to collect proceeds from the large life insurance policy on her, and to enable him to pursue his obsessive relationship with his girlfriend at that time, L. Davis.

At trial, Abney objected to, *inter alia*, the Commonwealth's introduction of: (i) Davis' testimony in the form of past recollection recorded, consisting of her recitation of portions of her affidavit given during the 1978 litigation over the subject life insurance policy; (ii) the autopsy report and accompanying expert testimony based on the report; and (iii) a request for analysis and two certificates of analysis offered to establish the chain of custody of the vaginal swabs taken during the victim's autopsy. The trial court overruled Abney's objections and admitted the evidence.

The jury convicted Abney of first-degree murder as charged. This appeal followed in which Abney challenges the trial court's evidentiary rulings.

## II. ANALYSIS

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation and internal quotation marks omitted). However, to the extent the trial court makes an error of law in the admission of evidence, "an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000). Furthermore, such evidentiary issues presenting a "question of law" are "reviewed *de novo* by this Court." Michels, 47 Va. App. at 465, 624 S.E.2d at 678 (whether

certificates from governmental agency were "testimonial hearsay" implicating the Confrontation Clause was subject to *de novo* review).

## A. Davis' Affidavit

Davis reviewed her 1978 affidavit arising from the litigation involving the subject life insurance policy, and the transcript of her testimony in that case, to refresh her memory in preparation for her testimony at Abney's criminal trial. Having done so, Davis, based on her independent recollection, testified at trial to a number of details regarding her relationship with Abney during the period of December 1977 through February 1978 (a period both before and after the time of Mona's death). There were other details in her affidavit, however, which she could not independently recall after reviewing the affidavit. Consequently, the Commonwealth introduced Davis' recitation of those portions of her affidavit. The Commonwealth based the introduction of this part of her testimony on the "past recollection recorded" exception to the hearsay rule. See Scott v. Greater Richmond Transit Co., 241 Va. 300, 305, 402 S.E.2d 214, 218 (1991) ("When a witness reads a record of past recollection to a jury, he merely is telling the jury what he knew and recorded at a prior time, but has since forgotten.").

Abney contends this testimony did not qualify under the "past recollection recorded" hearsay exception. Alternatively, Abney argues the testimony consisted of "testimonial hearsay" prohibited under the Confrontation Clause of the Sixth Amendment, as interpreted in Crawford v. Washington, 541 U.S. 36 (2004).

(i)

"The general rule of past recollection recorded allows, over a hearsay objection, a witness with no independent recollection of an incident to testify directly from [some form of written document] if certain requirements are met." Bailey v. Commonwealth, 20 Va. App. 236, 240,

456 S.E.2d 144, 146 (1995). The foundational requirements for this hearsay exception are as follows:

> "(1) the witness must have had firsthand knowledge of the event; (2) the written statement must be an original memorandum made at or near the time of the event, when the witness had a clear and accurate memory of it; (3) the witness must lack a present recollection of the event; and (4) the witness must vouch for the accuracy of the written memorandum."

Id. at 240-41, 456 S.E.2d at 146 (quoting James v. Commonwealth, 8 Va. App. 98, 102, 379 S.E.2d 378, 380-81 (1989)). Furthermore, "'it is not essential that the record of past recollection shall have been made by the witness, if he knows that it is true as written. It is sufficient if the memorandum was made by someone else but has been examined by the witness and is known by him to be correct.'" Id. at 241, 456 S.E.2d at 146 (quoting 81 Am. Jur. 2d Witnesses § 783 (1992)).

Abney acknowledges that Davis "had first hand knowledge of the events for which she testified," i.e., the events involving her relationship with him, and that she "lacked a present recollection of [some of those] events." Abney contends, however, in reference to foundational requirements two and four of the above-stated rule, that Davis' affidavit was not timely when given in November 1978 and that she did not adequately vouch for its accuracy during her testimony at Abney's criminal trial. Thus, Abney argues, the trial court erred in allowing Davis to read portions of her affidavit to the jury on the basis of the "past recollection recorded" hearsay exception. We disagree.

Abney contends the affidavit was not timely because Davis executed the affidavit ten months after the occurrence of the "events" she described in it. The trial court rejected this argument, finding that this foundational requirement was met. Given the nature of the events set forth in the affidavit, we cannot say the trial court abused its discretion in making that finding. See Stevens v. Commonwealth, 46 Va. App. 234, 246, 616 S.E.2d 754, 760 (2005) ("[W]hether

[an evidentiary] foundation is sufficient is a question within the sound discretion of the trial judge." (citation and internal quotation marks omitted)).  What Davis recounted from memory in her affidavit was not some highly technical information or some incident of which she had only been a disinterested and casual observer.  Rather, Davis recited facts about her intimate relationship with Abney over a period of approximately two-and-a-half months, including places they went, things they did, and conversations they had, which were "events" she reasonably could have accurately recalled ten months later.  See United States v. Williams, 571 F.2d 344 (6th Cir. 1978) (affirming admission of statement given by witness to Secret Service agent six months after the events recited in the statement, under past recollection recorded rule); see generally, Kent Sinclair, Joseph C. Kearfott, Paul F. Sheridan, & Edward J. Imwinkelried, Virginia Evidentiary Foundations § 9.6[A] (2007) (characterizing the timeliness requirement in terms of whether the witness made or adopted a record of the facts "when the matter was fresh in the witness's memory").

We further find no merit in Abney's argument that Davis did not adequately vouch for the accuracy of her affidavit.  Davis testified that she went to an attorney's office in 1978, in conjunction with the litigation involving the insurance policy on Mona, and gave a statement in the presence of two lawyers and a court reporter.  Davis was "sure" that she then reviewed her affidavit containing the information from her recorded statement.  She stated unequivocally that the information she provided in her statement, as subsequently set forth in her affidavit, was "[t]rue."  In terms of her recollection of that information at the time she gave her statement, she considered it "[p]robably crystal clear on many points."  Davis also identified her affidavit, dated November 14, 1978, and remembered signing it before a notary public, and, as indicated on the affidavit, it was both "[s]ubscribed and sworn to" by Davis.  Finally, the trial court found Davis to be a credible witness.  Based on these facts, viewed in the light most favorable to the

- 7 -

Commonwealth, we find no abuse of discretion in the trial court's determination that the vouching foundation requirement to the "present recollection recorded" doctrine was met.

(ii)

We also reject Abney's alternative argument, as did the trial court, that the portion of Davis' testimony admitted as a "past recollection recorded" hearsay exception violated his Sixth Amendment right to confront witnesses against him, as a matter of law, based on the Crawford decision.

In Crawford, the United States Supreme Court held that the Confrontation Clause prohibits the introduction of "testimonial hearsay" in a criminal trial where the declarant is unavailable to testify and the defendant had no prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 68. Abney asserts that Davis' affidavit constituted testimonial hearsay, as defined in Crawford, and that he had no prior opportunity to cross-examine her on it. He then asserts that, because Davis did not have an independent recollection of the events she read into evidence from her affidavit, she was effectively "unavailable for purposes of the Sixth Amendment." Thus, Abney argues, he was "denied his constitutional right to fully cross-examine the witnesses against him" at trial. [1]

We find no support for Abney's argument in Crawford. The Supreme Court made clear in Crawford that the Confrontation Clause applies only to "testimonial statements of witnesses absent from trial." Crawford, 541 U.S. at 59. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court

---

[1] For purposes of this argument, we assume without deciding that Davis' affidavit constituted "testimonial hearsay" under Crawford. We need not decide that issue because we conclude that Davis was available for cross-examination in accordance with the Confrontation Clause and, thus, on this basis alone, Abney's argument fails.

statements cannot be replicated, even if the declarant testifies to the same matters in court." Id. at 59 n.9 (citations and internal quotation marks omitted). See Blackman v. Commonwealth, 45 Va. App. 633, 644, 613 S.E.2d 460, 466 (2005) ("For all its novelty, . . . Crawford confirms the traditional view that the Confrontation Clause 'does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.'" (quoting Crawford, 541 U.S. at 59 n.9)).

This explanation in Crawford is consistent with previous pronouncements by the Supreme Court on the scope of the Confrontation Clause, as it relates to Abney's argument. In Delaware v. Fensterer, 474 U.S. 15, 21-22 (1985) (*per curiam*), the Court stated: "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." Similarly, in United States v. Owens, 484 U.S. 554 (1988), the Court explained that "the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 559 (citations and internal quotation marks omitted). In short, as the Supreme Court stated in California v. Green, 399 U.S. 149, 157 (1970), "it is this *literal right* to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." (Emphasis added.)[2]

---

[2] Issues regarding memory loss for hearsay purposes and what constitutes availability for cross-examination for purposes of the Confrontation Clause are subject to distinct considerations; and the overriding constitutional consideration in this context is that the lack of memory of a witness at trial does not necessarily implicate the Confrontation Clause. See Owens, 484 U.S. 554 (holding Confrontation Clause not violated by admission of testimony concerning prior, out-of-court identification where the identifying witness/victim was unable, because of memory loss, to explain at trial the basis for identifying defendant to an FBI agent while witness was being hospitalized for his injuries); Fensterer, 474 U.S. 15 (holding Confrontation Clause not violated where expert witness testified as to what opinion he had formed, but could not recollect the basis on which he had formed it). As explained in Owens, the fact that a witness' testimony is "'marred by forgetfulness, confusion, or evasion'" does not mean that the defendant has not been given his right to cross-examine the witness as guaranteed by the Confrontation Clause. Owens, 484 U.S. at 558 (quoting Fensterer, 474 U.S. at 22). "'To

Accordingly, courts in a number of other jurisdictions, both before and after <u>Crawford</u>, have held that the past recollection recorded hearsay exception does not violate the Confrontation Clause where the declarant, despite his or her memory loss, was subject to cross-examination as a witness at trial.  <u>See</u>, <u>e.g.</u>, pre-<u>Crawford</u> cases:  <u>Isler v. United States</u>, 824 A.2d 957, 961 (D.C. App. 2003); <u>United States v. Picciandra</u>, 788 F.2d 39, 42-43 (1st Cir. 1986); <u>United States v. Riley</u>, 657 F.2d 1377, 1385-86 (8th Cir. 1981); <u>United States v. Marshall</u>, 532 F.2d 1279, 1285-86 (9th Cir. 1976); <u>United States v. Kelly</u>, 349 F.2d 720, 770-71 (2d Cir. 1965); post-<u>Crawford</u> cases:  <u>State v. Real</u>, 150 P.3d 805, 806-09 (Ariz. App. 2007); <u>People v. Linton</u>, 800 N.Y.S.2d 627, 628 (N.Y. App. Div. 2005); <u>State v. Gorman</u>, 854 A.2d 1164 (Me. 2004); <u>Clark v. State</u>, 808 N.E.2d 1183, 1189-90 (Ind. 2004).  <u>See also</u> Advisory Committee Notes to Fed. R. Evid. 803(5) ("Recorded Recollection") (explaining that courts accept the hearsay exception for recorded recollection despite Confrontation Clause challenges, citing <u>Kelly</u>, 349 F.2d at 770).[3]

Here, Davis was available at trial and extensively cross-examined by the defense. Among other things, defense counsel closely questioned Davis regarding the circumstances under which she gave her affidavit, even though she did not independently recall certain portions

the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.'" <u>Id.</u>  Thus, the Supreme Court further stated:  "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee."  <u>Id.</u> at 560.  As indicated above, <u>Crawford</u> did not change the applicability of these principles.

[3] <u>See also</u> <u>United States v. Ghilarducci</u>, 480 F.3d 542, 548-49 (7th Cir. 2007); <u>State v. Rockette</u>, 718 N.W.2d 269, 275-77 (Wisc. App. 2006); <u>State v. Pierre</u>, 890 A.2d 474, 495-502 (Conn. 2006); <u>State v. Price</u>, 146 P.3d 1183, 1186-93 (Wash. 2006); <u>People v. Sharp</u>, 825 N.E.2d 706, 710-15 (Ill. App. Ct. 2005); and <u>People v. Candelaria</u>, 107 P.3d 1080, 1086 (Colo. Ct. App. 2004) (all addressing similar issues under <u>Crawford</u>, and holding that Confrontation Clause was not violated by introduction of witness' prior out-of-court statement).

of the information in it. She was nevertheless extensively cross-examined as to both what she could and could not presently recall, as well as the details of what she did remember. Davis was also subject to cross-examination regarding any bias she may have had against Abney at the times in question. We thus conclude that Abney's constitutional right to confront witnesses against him was met here, where he had "'an opportunity, not only of testing the recollection and sifting the conscience of [this] witness, but of compelling [her] to stand face to face with the jury in order that they [could] look at [her], and judge by [her] demeanor upon the stand and the manner in which [she gave her] testimony whether [she was] worthy of belief.'" Green, 399 U.S. at 157-58 (quoting Mattox v. United States, 156 U.S. 237, 242-43 (1895)).

### B. The Autopsy Report and Accompanying Expert Testimony

Dr. James Beyer performed the autopsy and prepared the autopsy report on the victim. Dr. Beyer was deceased, however, at the time of Abney's criminal trial. The Commonwealth introduced the autopsy report at trial through Dr. Frances Field, an assistant chief medical examiner for the Commonwealth. Dr. Field testified, as an expert in forensic pathology, that the cause of the victim's death was "[a]sphyxiation secondary to strangulation by ligature," the same cause of death stated in the autopsy report. Dr. Field reached this conclusion, as she explained, based on her "review of Dr. Beyer's autopsy report and the photographs taken at the autopsy." Dr. Field then described the features on the victim's body, as noted in the autopsy report and as shown in the autopsy photographs, all of which, according to Dr. Field, were consistent with strangulation of the victim by ligature—a ligature being "an article put around the neck to cause strangulation."

Abney argues the admission of the autopsy report, along with Dr. Field's testimony as to the cause of death, violated his Sixth Amendment right to confront witnesses against him, based, again, on Crawford. More specifically, Abney argues that the autopsy report was testimonial

- 11 -

hearsay.  Thus, according to Abney, because Dr. Beyer was not available to testify at trial regarding the autopsy report, Abney "must have been given a prior opportunity to cross-examine Dr. Beyer," but "he was not given that opportunity."  Consequently, Abney argues, this "testimonial" evidence was inadmissible, as the "two prong Crawford test" of "unavailability" and a "prior opportunity to cross-examine the declarant" was not met.  For the same reasons, Abney argues that Dr. Field's testimony as to the cause of the victim's death was inadmissible, because that opinion was, in turn, based on inadmissible evidence under Crawford, i.e., the autopsy report.  Abney further asserts that Code § 19.2-188, which provides for the admissibility of an autopsy report made by a medical examiner without requiring the examiner to testify, was rendered unconstitutional under the holding in Crawford.  The Commonwealth argues that Abney's contentions are without merit because the autopsy report was not testimonial evidence for purposes of the Confrontation Clause, as defined in Crawford and its progeny.

It is a well established principle of appellate review that this Court should not decide constitutional questions "'if the record permits final disposition of a cause on non-constitutional grounds.'"  Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (quoting Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987)).  Similarly, we should decide cases "'on the best and narrowest ground available.'"  Id. (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).

We thus assume without deciding, for purposes of this appeal, that the admission of both the autopsy report and Dr. Field's testimony as to the cause of death based on that report was prohibited under the Confrontation Clause.  We do so because it is unnecessary for us to decide that issue.  In light of Abney's confession as to the cause of death, as adduced at trial, we conclude that any error in the admission of the autopsy report and Dr. Field's subject testimony was harmless beyond a reasonable doubt.  See Luginbyhl, 48 Va. App. at 64, 628 S.E.2d at 77

(violations of the Confrontation Clause are subject to harmless error review (citing United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004))).

"When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). "'We decide whether the erroneous admission of evidence was sufficiently prejudicial to require reversal on the basis of our own reading of the record and on what seems to us to have been the probable impact on the fact finder.'" Corado v. Commonwealth, 47 Va. App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Green v. Commonwealth, 32 Va. App. 438, 446, 528 S.E.2d 187, 191 (2000)). "'An error is harmless only when it plainly appears from the record and the evidence that the error has not affected the verdict. Whether an error does not affect the verdict must be determined without usurping the jury's fact finding function.'" Id. (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457, 418 S.E.2d 343, 345 (1992)).

In this case, Abney confessed to Detectives Milefsky and Murphy, as they testified at trial, that he strangled his wife to death with a ligature, his belt. Abney claimed it was an accident, however, that occurred when he and his wife were engaged in what he described as "kinky" sex. Abney made the same admission when he testified at trial, while still claiming he killed her by accident. He further described the act of strangling her with his belt wrapped around her neck, while they were engaged in sexual intercourse, as "erotic asphyxiation."[4]

Given Abney's own testimony, as well as his admission to police, there was no dispute whatsoever at trial as to (a) the fact that Abney killed his wife, and (b) the manner in which he killed her, which was precisely the stated cause of death in the autopsy report and by Dr. Field in

_____

[4] In response to defense counsel's questions on cross-examination, Dr. Field explained that "erotic asphyxiation" is the act of one person cutting off the supply of blood to the head of another by "put[ting] something around her neck in order to heighten sexual response."

her testimony at trial: asphyxiation secondary to strangulation by ligature. The issue at trial was, instead, whether Abney, in strangling his wife to death with his belt, intended to kill her, or killed her by accident. Therefore, any error in the admission of the autopsy report, and Dr. Field's testimony as to the cause of death based on that report, was harmless beyond a reasonable doubt, as "'it plainly appears from the record'" that such error "'has not affected the verdict.'" Corado, 47 Va. App. at 323, 623 S.E.2d at 456 (quoting Hooker, 14 Va. App. at 457, 418 S.E.2d at 345).

### C. Request for Analysis and Certificates of Analysis on Vaginal Swabs

Finally, Abney challenges the trial court's admission of three documents introduced by the Commonwealth pertaining to the chain of custody and analysis of the vaginal swabs taken from the victim's body at the autopsy. The first of these documents is a "Request for Laboratory Examination," dated January 29, 1978, indicating Dr. Beyer's transfer of the swabs to the Commonwealth's forensic laboratory for analysis. The second document is a "Certificate of Analysis," dated March 2, 1978, consisting of the first page of what appears to be a three-page report, which indicates the return of the swabs from the laboratory to the Fairfax County Police Department. The third document is a "Certificate of Analysis," dated October 28, 2004, consisting of a duly certified two-page report summarizing the DNA analysis of the semen sample on the swabs and Abney's buccal sample, which resulted in matching DNA profiles. Abney argues that the documents were admitted into evidence in violation of the hearsay rule, the Confrontation Clause, as applied in Crawford, and/or other evidentiary principles specifically governing chain of custody issues.

We dispose of these arguments in the same way and for the same reasons that we dispensed with Abney's arguments regarding the admission of the autopsy report and Dr. Field's testimony. Assuming without deciding that admitting Dr. Beyer's request for analysis and the

two certificates of analysis was constitutional error, we conclude that such error was harmless beyond a reasonable doubt.

Absent this documentary evidence, Abney asserts, there would have been no DNA evidence against him, and, without it, the Commonwealth would not have been able to establish his guilt. More specifically, Abney contends that, without such evidence, the Commonwealth could not have "impeach[ed] [his] 1978 statement to the police regarding his prior sexual contact with his wife," nor could the Commonwealth have "establish[ed] [his] presence in the hotel room on the night of [his wife's] death." The DNA evidence was, no doubt, significant in aiding the police in their investigation, and in leading to Abney's indictment. The obvious fallacy in Abney's contention, however, is that, at trial, there was no dispute about the fact that he killed his wife, as well as the fact that he had sexual intercourse with her shortly before her death, based on his confession to the police and his own testimony at trial. The record thus clearly establishes that any error in admitting the DNA evidence was harmless beyond a reasonable doubt.

### III. CONCLUSION

For these reasons, we affirm Abney's conviction.

<u>Affirmed.</u>