846 So.2d 540 (2003)
Nathaniel KIMBROUGH, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-288.
District Court of Appeal of Florida, Fourth District.
March 12, 2003.
*541 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Donna L. Eng, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant challenges his multiple convictions arising out of an armed car-jacking incident. The issue which we address is whether the court erred in admitting the co-defendant's taped statement as a past recollection recorded over appellant's objection that the state failed to lay the proper predicate for its admission. Because the co-defendant admitted he had no recollection of his statement and could not identify his voice on the tape, we hold the state failed to lay the proper predicate for admitting the statement. We therefore reverse.
Emory Carter had just exited I-95 in Broward County and was stopped at a light when he noticed appellant, the driver of the vehicle next to him, exit his car and approach Carter's window. Appellant put a gun to Carter's head and ordered him to exit his vehicle. Appellant entered Carter's vehicle and sped away. Appellant's cousin, Carl Ashley, who had remained in appellant's vehicle during the car-jacking, followed. Two citizens who observed the car-jacking gave chase, joined later by law enforcement officers. Eventually, after a wild and dangerous chase on and off of I-95, the officers were able to stop and apprehend appellant.
Several months after the incident, Ashley was arrested and gave a taped statement to the detectives regarding his role in the incident. In his statement, Ashley said appellant planned to commit a robbery and obtained a black revolver for that purpose. On the day of the car-jacking, appellant picked Ashley up and, after driving around for a while, appellant said, "[L]et's go rob somebody." Ashley then described the details of the car-jacking.
Prior to appellant's trial, Ashley pled guilty to the charge of accessory after the fact for his participation in the car-jacking. He was serving his sentence at the time he *542 was subpoenaed for trial. Because the state was unsure Ashley would testify truthfully, it sought to proffer his testimony. When asked whether he remembered giving a statement to the detective, Ashley claimed he did not know and had nothing to say on the matter. He claimed to know nothing about the incident. When the tape was played for him, he denied being able to recognize his voice. He said nothing would refresh his memory, as he "ain't been in my right mind the last couple of days, I don't know nothing."
The state then called the interrogating detective who identified Ashley and Ashley's voice on the tape. The state then suggested calling Ashley before the jury to determine if his recollection had been refreshed. If it had not, then the state argued it should be allowed to enter the confession as a past recollection recorded.
Defense counsel objected, arguing the state had failed to lay a proper predicate for the introduction of the taped statement, because Ashley indicated he did not remember anything about the incident, did not recognize his voice, and did not testify to anything inconsistent. Thus, the state's sole purpose for using the taped statement was to impeach its own witness which was improper because Ashley did not remember anything about the incident.[1] The court overruled the objection, concluding the state laid a proper predicate with the detective's testimony.
When the state called Ashley, he testified that he remembered being arrested for his participation in the crime but did not remember providing a taped confession to the detective. A portion of the tape was played, and he said he could not recognize his voice, at which time the state called the detective to identify Ashley's voice. The court then admitted the tape as substantive evidence, and it was played to the jury.
On appeal, appellant argues the state failed to lay a proper predicate to admit the tape as a past recollection recorded. Section 90.803(5), Florida Statutes (2000), provides an exception to the hearsay rule for past recollection recorded:
A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.
When the proper predicate is laid, a past recollection recorded is admitted as substantive evidence. See § 90.803(5).
Appellant contends the state could not offer the proper predicate because Ashley not only had no recollection of giving the statement but could not recognize his voice on the tape. The state contends the detective's testimony identifying Ashley's voice provides the sufficient predicate to admit the statement. We cannot agree.
There is a dearth of authority in Florida regarding the admission of recorded recollections. We have found two cases from our sister states discussing the use of a recorded recollection where the witness conveniently forgot making the statement.
In Ringgold v. State, 34 Md.App. 286, 367 A.2d 35, 36 (1976), the defendant's *543 mother-in-law gave an incriminating statement regarding her son-in-law's participation in a crime. When called to testify by the state, the mother-in-law had "`convenient amnesia.'" Id. She did not remember giving a statement to the police, she did not know whether it was true, and she could not recognize her signature on the statement. To admit the statement, the state called the police officer who testified that he had taken the statement from the mother-in-law and that she had signed it. See id. at 37. On that predicate, the statement was admitted as substantive evidence in the case.
On appeal, the court discussed the history of the hearsay exception for past recorded recollections:
An early discussion of the rules of evidence governing past recollection recorded is found in Martin v. Good, 14 Md. 398, 410 (1859), quoting from 1 Greenleaf, Evidence, sec. 437:
Where the writing neither is recognized by the witness as one which he remembers to have seen before, nor awakens his memory to the recollection of any thing contained in it, but nevertheless, knowing the writing to be genuine, his mind is so convinced that he is, on that ground, enabled to swear positively to the fact, the testimony will be received. The examples put show the reasonableness of the doctrine, and that the ends of justice require it to be so. A more recent author, whose conclusions, we think, are generally sustained by the authorities, states the English doctrine substantially in the same way. Powel on Evidence, 308, in 96 Law. Lib., 119. Here the witness stated, that from the paper being in his own handwriting, he had no doubt it did contain the true terms of the agreement made in his presence, and upon cross-examination he gave, in effect, the same testimony.

...
The crux of this case, however, is that the past recollection recorded if it is to be admitted into evidence must be offered by the witness who is either devoid of a present recollection or possessed of an imperfect present recollection and desires to use a memorandum of a past recollection. The witness must be able to assert now that the record correctly represented his knowledge and recollection at the time of making. 3 J. Wigmore, Evidence §§ 734, 746(2) (Chadbourne rev.1970).

In each of the cases we have cited it is the witness who verified the genuineness and accuracy of the facts recited in the memorandum. When the recollection of a witness is not refreshed by reference to the memorandum, but he recalls the memorandum and recalls that it was accurate when made or he recognizes the signature on the statement as his and testifies positively that he would not have signed the statement had he not believed it to be true at the time, he may testify from the memorandum or it may be received into evidence in connection with his direct examination or in cross-examination. 82 A.L.R.2d 473 (1962). In this case, however, the witness professed to have no recollection of the statements allegedly made by her to the officer. While it seems clear that this was a deliberate prevarication by the witness, there still was no adequate foundation upon which the statement could be admitted into evidence as past recollection recorded.
Id. at 38-39 (emphasis added).
Ringgold was cited with approval in Lindley v. State, 728 So.2d 1153 (Ala.1998). Just as in Ringgold, the witness in Lindley, *544 who had given a signed statement to the police at the time of the crime, testified at trial that he had no recollection of the statement he made, as he was drunk at the time. See 728 So.2d at 1155. Even though he recognized his signature on the statement, he was unable to testify to the statement's contents or its veracity. Because he could not vouch for the truthfulness of the statement, the court held it inadmissible. See id. at 1156.
While not a case of "convenient amnesia," Middleton v. State, 426 So.2d 548 (Fla.1982), suggests Florida also requires testimony establishing either the witness's recollection of having made the statement, or, if the witness has no specific recollection, testimony from the witness that the statement accurately reflects what was said at the time. In Middleton, the supreme court upheld the admission of a transcript of the defendant's confession as a recorded recollection, where the stenographer who transcribed the statement testified he had personally recorded the statement verbatim and had accurately transcribed his notes into the transcript, even though at the time of his testimony he could not recall what was said. In other words, even though the stenographer could not remember the transcript, the proper predicate for its admission was laid based upon his testimony that he recorded it accurately when made. See also Charles W. Ehrhardt, Florida Evidence § 803.5 (2001 ed.) ("The foundation may be laid by testimony that the witness remembers making an accurate recording of the fact or event or by testimony that the witness is confident that the facts would not have been written unless they were true.").
In this case, as in Ringgold and Lindley, Ashley could not testify either that the statement was his or that it was accurate. Although he most likely developed "convenient amnesia," the state could not establish the proper predicate for admission of the statement.
We cannot conclude that this error was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1138-39 (Fla.1986). While there was substantial evidence offered regarding the chase, the victim's identification of appellant was not unequivocal. One of the witnesses to the car-jacking identified appellant at the hospital the night of the incident, but admitted at trial he never saw appellant's face and thus could not identify appellant in court. Based upon the inconsistencies in identifying appellant, Ashley's taped confession implicating appellant as the car-jacker, coupled with his status as a co-defendant presently imprisoned for his participation in the crime, was not harmless.
Reversed and remanded for a new trial.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] See Morton v. State, 689 So.2d 259, 264 (Fla.1997), overruled on other grounds by Rodriguez v. State, 753 So.2d 29 (Fla.2000).