41 So.3d 935 (2010)
Darius Jamine POLITE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D08-3921.
District Court of Appeal of Florida, Fifth District.
July 16, 2010.
Rehearing Denied August 13, 2010.
*936 William R. Ponall and Warren W. Lindsey, of Kirkconnell, Lindsey, Snure and Yates, P.A., Winter Park, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellee.
LAWSON, J.
Darius Jamine Polite timely appeals his convictions by jury verdict for burglary of a dwelling with an assault or battery, robbery with a firearm, aggravated assault with a firearm and possession of a firearm by a convicted felon.[1] Polite contends: (1) that the trial court improperly admitted the victim's written statement into evidence because the predicate for past recollection recorded was not established; (2) that the court improperly admitted evidence of the victim's out-of-court identification of Polite from a photo line-up, because the State did not question the victim about the identification during its direct examination of her; and (3) that the trial court abused its discretion in denying his request for a mistrial. We affirm, and write primarily to address the first two issues.

Background
On the morning of July 14, 2008, three men broke into the home of Falisa Levine and her two daughters, ages fifteen and ten. The men kicked in the front door, and rushed inside with two guns drawn, initially taking Ms. Levine's purse. Ms. Levine recognized Polite, who lived in the neighborhood, and began screaming his name. When Polite recognized Ms. Levine, he told the other men that they had the wrong house, returned the purse, and ran out. According to Ms. Levine, Polite held one of the guns, which he pointed at her head before recognizing her. Another assailant pointed the second gun at the children during the encounter.
The deputy who responded to the 911 call testified that when he arrived Ms. *937 Levine and her daughters were in the front yard, and all of them were hysterical, not believing what had just occurred. The deputy spoke to Ms. Levine, who told him what happened and identified Polite by name as one of the men who broke into her home. She then gave a sworn written statement, detailing the events and again identifying Polite by name as one of the robbers. Later, she identified Polite in a photographic line-up.
At trial, however, Ms. Levine was extremely reluctant to testify. Before she entered the courtroom, the prosecutor informed the trial court that Ms. Levine would not stop crying because she was afraid that something would happen to her or her children if she testified. Upon being brought into the courtroom, Ms. Levine tried to avoid testifying, telling the trial court that she could not answer questions, as she was too traumatized to do so. On the stand, when first asked to tell the jury what happened, Ms. Polite answered: "I cannot do this." She then explained that: "I told them [the State] that I didn't want to do this; they're making me." After being instructed by the trial court that she must answer the parties' questions, Ms. Levine eventually began answering some questions. She admitted that the police came to her home, and that she and her daughters had told the police what happened. When shown her sworn statement, she identified it as the statement she gave to police on the day of the incident, but would not attest that the statement was "true and correct," stating that she was too traumatized to read it in the courtroom. She then again flatly refused to read the statement or to testify in court about anything that happened on July 14. The judge ordered the jury removed, and instructed Ms. Levine that she was under subpoena and could not refuse to answer questions. After a further exchange, the trial judge told Ms. Levine that she was being ordered to "answer the questions truthfully" and that "[s]aying I'm not going to answer is not an option."
The jury was returned to the courtroom and Ms. Levine testified, by answering "yes or no" questions, that three men kicked in the door to her home, and came in. She also agreed that one of the men put a gun in her daughter's face, but then began claiming lack of memory of the events. Ms. Levine was again shown her sworn statement, and again authenticated the document. She also testified that she made the statement "at the time or shortly after the event." This time, when asked whether the events were "fresh" in her mind when she gave this statement, she answered, "not really," and that "[t]he police and everybody was pressuring me." Notwithstanding, Ms. Levine conceded that she wrote the statement "like an hour" after experiencing the events described in the statement. When the prosecutor asked Ms. Levine if the statement was true and correct, defense counsel objected, stating only: "That's past recollection recorded." Before the trial court ruled on the objection, defense counsel withdrew it. However, Ms. Levine was never asked or directed to answer the question, and the question was not restated.
The prosecutor then sought to admit Ms. Levine's out-of-court statement as past recollection recorded. Defense counsel objected on grounds that the rule only allowed an adverse party to admit the document into evidence. The prosecutor correctly responded that the rule allowed the party offering the statement to have it read to the jury, but that the document itself could only be admitted into evidence (and shown to the jury) upon motion by the adverse party. The trial court agreed, and asked defense counsel if he had any other basis for objection. He then objected *938 on Sixth Amendment (Confrontation Clause) grounds. The trial court overruled this objection, noting that the declarant was on the witness stand and subject to cross-examination. When the trial court asked for any other legal ground for an objection, defense counsel offered no further objection, and the statement was read to the jury soon thereafter. It stated:
I, Falisa Levine, was coming out of my bathroom when I heard a loud bang. I looked into my kitchen and noticed three black men entering the door by kicking it in. Two men I did not recognize, one I did only knowing him as Darius. Darius I know from the neighborhood. Darius then told me to get on the ground and also had handgun to head. When I screamed his name, Darius, he then said to other guys, we have the wrong house. One guy took my purse and Darius told him to put it back. The guys then ran out the door. Only two of the guys had handguns. Third guy did not. One of the guys did put handgun on kids. That is the guy that had his face covered up. The third guy came in after other two guys had already entered not doing anything but looking around. I then asked Darius why he is doing this and he said that he has the wrong house. He then walked outside leaving yard as I walked behind to see how they were traveling. I do know that this is Darius as soon as he entered my home. After that Darius then called my name. All the suspects left. I then tried to call police and phone line would not work. Second suspect did put purse on the shoulder and took my money totaling $250 out of my purse. That's when Darius told him to put it back because this is like family.
First suspect 6'2, 200 pound black male; second suspect, 5'2, 130 pound, black male; third suspect, 5'2 130 pound black male.
Sworn to and subscribed before me, this 14th day of July, 2008. Deputy Sheriff Brissette. I swear/affirm the above attached statements are correct and true, Falisa Levine.
On cross-examination, Ms. Levine testified that she could have made a mistake in her statement as "[t]hey was pressuring [her]" and she "[did not] even know if [she] got the right person."
Police investigation verified that there was damage to the front door of Ms. Levine's homethat the door had been kicked in, causing the door frame to split. Further investigation verified that the telephone line had been cut outside. A videotape from a camera located across the street from the victim's house confirmed the arrival of the three men; showed one of them going to the side of the house (where the phone line had been cut), and then reappearing; showed the three then going in through the front door; and, showed them leaving the house and driving away a few minutes later.
Polite was located that same day. He initially fled from the marked patrol car, but police officers were able to secure him. Polite was interviewed by the police the same day and again several days later, both times denying any involvement in the charged offenses. In the interviews, Polite maintained that he went to a local diner for breakfast, then went to a nearby convenience store with a couple of friends, then to a friend's house, but that he did not go near the victim's house.
Evidence was also introduced that Polite's movements were being monitored as a requirement of probation, using a GPS ankle monitor, at the time of the crimes. The GPS device reported Polite's location every five minutes and was accurate to within 50 feet. The GPS signal confirmed *939 that Polite was in or within 50 feet of the victim's home at the time of the crimes. Additionally, evidence was introduced that the convenience store Polite claimed to have gone to about the time of the crimes was under video surveillance. Contrary to Polite's statement to police, the store's surveillance footage did not show Polite at the store at any time that morning.
The police officer who had interviewed Polite also testified that the victim later identified Polite as one of the offenders from a photographic line-up.
After deliberations, the jury returned a verdict finding Polite guilty of the charges, as previously indicated. He was sentenced as a prison releasee reoffender to concurrent terms of life in prison on the burglary and robbery charges, and to concurrent lesser sentences on the remaining counts. This appeal followed.

Admission of Victim's Statement Under Past Recollection Recorded Hearsay Exception
Polite contends that the trial court improperly allowed the State to read Ms. Levine's written statement to the jury because the predicate for past recollection recorded was not established. More specifically, Polite contends that because Ms. Levine "never testified that the written statement accurately reflected the facts she allegedly observed on the date of the charged offenses or that she was being truthful at the time she wrote the statement", the written statement should not have been admitted pursuant to section 90.803(5), Florida Statutes (2008).
We first find that this issue was not properly preserved for appellate review. Specifically, at trial, Polite never made the argument that he now attempts to makethat the foundation for admission under section 90.803(5), Florida Statutes (2008), may only be laid with testimony at trial from the declarant (the person who made the out-of-court statement). In fact, Polite's counsel never pointed to any deficiency in the foundation laid by the State for admission of the statement.
It is well-settled that to preserve an issue for appellate review, "litigants, including criminal defendants, must ... 1) mak[e] a timely contemporaneous objection in the trial court; 2) stat[e] the legal grounds for that objection; and 3) rais[e] the specific argument in the appellate court that was asserted as the legal ground for the objection or motion made in the trial court." Sanchez v. State, 909 So.2d 981, 984 (Fla. 5th DCA 2005) (citing Harrell v. State, 894 So.2d 935 (Fla.2005)). Applying this standard, it is clear that this issue was not preserved for review.
Even if Polite had preserved this issue for review, we believe that the evidence presented by the State was sufficient to secure admission of the statement under section 90.803(5). The hearsay exception for past recollection recorded provides:
Section 90.803(5) Recorded Recollection
The provision of s. 90.802[2] to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
(5) Recorded Recollection.
A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify *940 fully and accurately, shown to have been made by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.
Polite correctly points out that Florida case law, as it stands currently, does not allow a written statement to qualify as a past recollection recorded unless the declarant lays the foundation for its admission with testimony at trial that he or she recorded the statement when the described events were fresh in his or her mind, and attests to the accuracy of the statement (either by testifying that he or she made an accurate record of the fact or event or that he or she is confident that the facts would not have been written unless they were true). E.g., Hernandez v. State, 31 So.3d 873 (Fla. 4th DCA 2010) (holding that where witness was unable, or unwilling, to attest to the accuracy of the taped conversation, the state could not introduce the same as a past recollection recorded); Smith v. State, 880 So.2d 730 (Fla. 2d DCA 2004) (holding audio-tape recordings were inadmissible as past recollection recorded where witnesses did not testify that the recordings accurately reflected their memories of events when made); Montano v. State, 846 So.2d 677 (Fla. 4th DCA 2003) (holding tape recorded statement given to police shortly after criminal incident was inadmissible under section 90.803(5) when witness did not remember its contents and did not testify that it correctly reflected her knowledge or that she tried to be truthful at the time she made the statement).
We disagree with these cases because they are contrary to the plain language of the statute and rule.[3] Section 90.803(5) simply requires as a foundation that the statement is "shown to have been made by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly." The statute does not say that this "showing" must always (or only) be made by testimony from the declarant. A plain reading of the statute would allow admission of the statement so long as the state presented evidence (from any source) sufficient to support a finding that the statement was made when the matter was fresh in the witness' mind, and that it was accurate. This is the approach taken by several cases applying the companion provision in the federal rules relating to past recollection recordedFederal Rule of Evidence 803(5)or identical state evidence rules. See U.S. v. Porter, 986 F.2d 1014, 1017 (6th Cir.) ("Rule 803(5) does not specify any particular method of establishing the knowledge of the declarant nor the accuracy of the statement. It is not a sine qua non of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration ... of factors indicating trustworthiness, or the lack thereof. While Rule 803(5) treats recorded recollection as an exception to the hearsay rule, the hearsay is not of a particularly unreliable genre. This is because the out-of-court declarant is actually on the witness stand and subject to evaluation by the finder of fact, in this case the jury."), cert. denied, *941 510 U.S. 933, 114 S.Ct. 347, 126 L.Ed.2d 312 (1993); Pickett v. U.S., 822 A.2d 404, 406 (D.C.2003) (stating that the court should adhere to the rule that the witness must confirm the accuracy of the recorded statement, but interpreting this to mean that unless the witness expressly repudiated the statement at trial, the trial judge "may consider all of the circumstances in finding the requisite confirmation, including the demeanor of the witness in court evincing, for example, hostility or reluctance to testifyas well as the conditions under which the out-of-court statement was made"); State v. Alvarado, 89 Wash. App. 543, 949 P.2d 831, 835-36 (1998) (agreeing with Porter and holding that the requirement that a recorded recollection accurately reflect the witness's knowledge may be satisfied without the witness's direct averment of accuracy at trial and that the court must examine the totality of the circumstances, including (1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement); State v. Marcy, 165 Vt. 89, 680 A.2d 76, 78-81 (1996) (following Porter and holding that the plain language of rule 803(5) does not add a requirement that the declarant must testify that the statement accurately reflected his or her knowledge at the time the statement was made, and that "[h]ad the drafters intended this result, they could easily have accomplished it by changing the language of the rule. Instead, the rule is phrased in the passive voice, requiring only that the memorandum or record be `shown to have been made or adopted by the witness[,]'" and concluding that the language of the rule contemplates a more flexible case-by-case determination of the admissibility of a statement as past recollection recorded).
In this case, the victim testified that three men came to her house, kicked the door open, and put a gun to her daughter's face. Beyond this, the victim testified that she could not remember any more details at the time of trial. As pointed out by the State, this event would qualify as "a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately." § 90.803(5), Fla. Stat. (2008). Further, the victim identified the written statement as the statement she gave to police on the day of the crime, approximately one hour after the events took place, and testified that she told the police what happened when they came to her house. Given the totality of the circumstances in this case, including that the witness swore to the statement as true at the time she gave it; that she was still consumed with the emotions of the event when talking with police; and that other evidence corroborated her statement, we find that there was sufficient evidence to lay a foundation for admission of the statement under section 90.803(5), even though the declarant herself never confirmed the accuracy of the statement at trial.

Admission of Evidence Regarding Victim's Identification of Polite from a Photo Line-Up
Polite next contends that the trial court abused its discretion by admitting evidence of Ms. Levine's out-of-court identification of him from a photo line-up on grounds that the State failed to inquire into this issue during its direct examination of Ms. Levine. E.g., Deans v. State, 988 So.2d 1271 (Fla. 5th DCA 2008) (holding that trial court erred when it admitted out-of-court identification of defendant when the witness who made the identification was never asked about defendant's identity at trial); Neilson v. State, 713 So.2d 1110 (Fla. 2d DCA 1998) (holding *942 that testimony regarding out-of-court identification was inadmissible where the state failed to ask the witnesses about the identification during its direct examination). These cases are based upon the language of section 90.801(2)(c), Florida Statutes, which defines an out-of-court statement of identification as admissible non-hearsay only when the declarant testifies at trial and is "subject to cross-examination concerning the statement...."[4] These cases reason that the declarant is not subject to cross-examination about a topic not covered during a direct examination because the party cross-examining a witness must generally limit its questions to matters within the "scope" of the direct examination. Id.; see also, § 90.612(2), Fla. Stat. (2009) ("Cross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in its discretion, permit inquiry into additional matters."); Chandler v. State, 702 So.2d 186, 195 (Fla.1997) ("`cross-examination is generally limited to the scope of the direct examination'") (quoting Charles W. Ehrhardt, Florida Evidence § 608.1 at 385 (1997 ed.)).
In the instant case, the State questioned Ms. Levine, generally, about whether she had identified "the person ... who had done this to you?" and whether she told police "the name of the person who had done this to you?" These questions, on direct, were broad enough to allow Polite's counsel to cross-examine the witness regarding both her initial out-of-court identification and the later identification when shown a photo line-up. See Zerquera v. State, 549 So.2d 189, 192 (Fla.1989) ("When the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief.") (quoting Coxwell v. State, 361 So.2d 148, 151 (Fla.1978)). We also note that although Ms. Levine did not acknowledge identifying Polite to the police in response to the State's questions on direct, her acknowledgement was not necessary for admission of the evidence under section 90.801(2)(c). See, e.g., Brown v. State, 413 So.2d 414, 415 (Fla. 5th DCA 1982) (holding that prior identification is not hearsay when the declarant is available at trial for cross-examination and that it "makes no difference whether the witness admits or denies or fails to recall making the prior identification"); A.T. v. State, 448 So.2d 613, 614 (Fla. 3d DCA 1984) (finding prior identification admissible even though declarant testified at trial that he possessed neither past nor present ability to identify defendant). It was sufficient that the State opened the door for cross-examination regarding the topic of Ms. Levine's out-of-court identification by asking her about it during its direct examination.

Denial of Mistrial Motion
As his final point on appeal, Polite contends that improper testimony by a police officer warranted a new trial. During the State's direct examination, one of the testifying officers was asked to identify *943 a photograph depicting a shoe-print on the door of the victim's house. The prosecutor asked if the officer was able to match the print up with anything, and then why not. The defense objected, but the witness continued talking, stating that Polite was the one who kicked in the door, and that he was not wearing shoes at the time of his arrest. The trial court instructed the witness to stop talking; sustained the defense's objection; and, instructed the jury to disregard the witness's last comment. Polite's counsel then moved for a mistrial, and this motion was denied.
Although we agree with Polite that the comment was improper, we find no abuse of discretion in denial of the mistrial motion. The record reflects that the improper testimony was extremely brief, never used by the prosecutor in any way, and occurred while the trial court and defense counsel were also speaking. More importantly, the comment was cumulative of evidence that Polite himself placed before the jury. More specifically, the defense presented the officer's theory of what happenedthat it was Polite who kicked in the victim's doorwhen it requested that Polite's taped interview be played for the jury in full. During a portion of the interview played at the insistence of the defense, the same officer made the same statement to Polite.
AFFIRMED.
EVANDER, J., concurs.
TORPY, J., concurs specially, with opinion.
TORPY, J., concurring specially.
I fully concur in the majority opinion. I write separately to address the past recollection recorded exception to the hearsay rule. The use of this rule to admit the statement of a recalcitrant witness is problematic. The rule is intended for use when a witness has a genuine lapse in memory about certain facts or under circumstances where the recordation is made to document details that no witness can be expected to recall, such as when a police officer records a vehicle identification number or makes an inventory. The rule is not intended for use when an uncooperative witness makes a disingenuous claim of amnesia as to an entire incident. Here, arguably, the witness was less than candid about her purported memory lapse. Nevertheless, that argument was not advanced below. Had it been advanced, the lawyers might have made further inquiry of the witness and the trial judge might have made a finding of fact as to whether the witness actually had a memory lapse. Because the issue was not preserved for our review, and indeed not argued here, my discussion on this point is simply an academic exercise.
As for the issue of whether the accuracy "showing" was made, although argued here, that issue was not preserved below by trial counsel.[1] Adherence to the contemporaneous, specific objection rule is not merely a technicality, as this case illustrates. Had the correct objection been made, the proponent of the evidence would have had an opportunity to ask additional questions of the witness. Even a recalcitrant witness, when under proper instruction by a trial judge, might rise to the occasion and give truthful testimony. Because the correct objection was not made, the opportunity to further persist in an effort to lay the predicate was lost, and we are left to speculate about what might have occurred.
I also agree with my colleagues that the accuracy of the statement may be established *944 through circumstantial proof. The recorded recollection statute requires a "show[ing]" that the memorandum is accurate. § 90.803(5), Fla. Stat. (2008). The linchpin of any hearsay exception is reliability. To tether the admissibility of recorded memoranda to the perfunctory attestation of accuracy by a testifying witness with memory problems is entirely formalistic and meaningless. Under this approach, the statement of a witness who recites the correct words is admissible, while the testimony of a witness who does not is excluded, without regard to the reliability of either. Just as a judge should have the authority to exclude a statement when the circumstances of its making suggest that it is unreliable, without regard the witness's conclusory recital of magic, predicate words, so should a judge permit circumstantial proof to "show" that a statement is reliable. If the totality of the circumstances are sufficient to make a threshold "showing" of reliability, then the statement should be admitted.
Many, if not all, of the conflicting cases from our sister courts address situations where the witness was uncooperative. Although the dispositions in those cases turn on the lack of "showing" of accuracy, perhaps the better justification for excluding evidence of this sort is that the witness has no genuine lapse of memory but instead simply refuses to give truthful testimony.
Here, insofar as the "showing" issue is concerned, the circumstantial indicia of reliability were sufficient to admit the statement and permit the jury to weigh it with other evidence.
NOTES
[1] §§ 810.02(2)(a), 775.087(1), 775.087(2); 812.13(2)(a), 775.087(2); 784.021; 775.087(2), Fla. Stat. (2008).
[2] § 90.802. Hearsay rule. Except as provided by statute, hearsay evidence is inadmissible.
[3] The Legislature adopted the Florida Evidence Code, by statute, in 1976. Ch. 76-237, Laws of Fla. The Florida Supreme Court has also approved and adopted most provisions in the code, including the section at issue here, as a rule of court. In re Fla. Evidence Code, 372 So.2d 1369 (Fla. 1979).
[4] Section 90.801(2)(c) provides "[a] statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... one of identification of a person made after perceiving the person."
[1] Counsel on appeal did not participate at trial.