POLEN, J.
Kino Bartholomew appeals his convictions and sentences for first-degree murder, two counts of attempted second-degree murder, robbery with a firearm, and attempted robbery with a firearm. We reverse because the trial court erred in admitting a taped statement of a State witness into evidence as past recollection recorded over appellant’s objection that the State failed to lay the proper foundation for its admission. Although, on this record, the trial court’s admission of seven autopsy photographs was not reversible error, we hold it was nevertheless an abuse of discretion, and discuss the issue so it is properly resolved on remand.
This case arose from a robbery, which resulted in the murder of Richard Entriken — the late founder/co-owner of the First Step Sober House, a drug-treatment center, in Pompano Beach. Entriken and Christopher Doherty ran First Step, and appellant was a former in-house resident. *890 Entriken collected weekly rent from residents at the conclusion of the Friday night meetings; after collecting the rent, he would exit the facility with the money in a duffle bag. Doherty and others routinely stood guard during his exit.
On Friday, January 25, 2008, at some point after 11:80 p.m., Entriken exited First Step with the duffle bag full of rent money. Suddenly, three men appeared with guns firing. Appellant was not identified as one of these men. One of the men approached Entriken, who was still holding the duffle bag containing about $20,000, and shot him in the head. The men fled to a nearby black Honda Accord with the duffle bag and drove off. Entriken died from that single gunshot to the head.
Two of the shell casings found at the scene near Entriken’s car were linked to two recent crimes involving a black Honda, which was linked to Cyrus Vance. Based on a Crimestoppers tip from appellant’s former co-worker, Winston Henry, implicating appellant in the robbery, the lead detective on the case obtained cell phone records from both appellant and Vance. These phone records indicated that appellant spoke to Vance on the night of the shooting. Although Vance was not arrested in connection with this incident, appellant was arrested several months later.
At trial, the State’s theory of the case was that appellant was the mastermind behind the robbery/murder. Appellant’s defense was that he did not commit the offenses or aid and abet the perpetrators. Prior to calling one of the State’s key witnesses, Derek Stephens, the prosecutor proffered Stephens’s testimony. During the proffer, Stephens refused to take the oath and said he had a bad memory. He said he did not remember-anything about the case or talking to an assisting detective, to whom he had previously made a taped statement regarding the robbery/murder.
The prosecutor suggested admitting Stephens’s taped statement as recorded recollection. The defense argued that it had previously moved to exclude Stephens as a witness in the trial, which the trial court had not ruled upon. The defense noted that it had a letter from Stephens expressly repudiating the taped statement. The defense made objections that not only had the State failed to lay the proper foundation for past recollection recorded, but also that the State was calling Stephens for the primary purpose of impeaching him with his prior statement to the police. After extensive argument and further defense objections, the trial court found the statement was admissible as past recollection recorded pursuant to Polite v. State, 41 So.3d 935 (Fla. 5th DCA 2010). See also § 90.803(5), Fla. Stat. (2010). The trial judge stated, “So, when I look at the totality of the circumstances surrounding the previous statement, I find there to be a high degree of reliability as to the accuracy of the statement.” The trial court reasoned that Stephens was essentially refusing to answer questions, and that his memory was better closer to the time of the offense, when he provided the information under oath.
The next day Stephens took an oath. He testified that he had been facing seventeen years in prison in an unrelated case so he made a taped statement for the assisting detective in exchange for help in his own case. He said he received only fifteen months in return for the statement. However, he could not remember what he said in that statement. He stated that hearing his voice on the tape would not help refresh his memory. After the trial court declared him a hostile witness, and in response to the prosecutor’s specific questions regarding the statement, he de *891 nied that the events it described ever occurred. The prosecutor showed Stephens the repudiation letter he wrote the previous week, which Stephens acknowledged. He said he wrote it because he was changing his life for the better. The prosecutor read the letter, wherein Stephens wrote that the detectives came up with the story, and he rephrased it in the statement he gave in exchange for help in his own case. In the letter, Stephens also wrote that he did not know anything about appellant and the robbery. Upon further questioning, Stephens testified that he never spoke to appellant about the First Step incident. He was also clear that appellant never spoke to him about committing a robbery, as the two men had never liked each other and did not speak at all.
The assisting detective was recalled, and over defense hearsay objections, the trial court admitted Stephens’s taped statement as “past recollection recorded.” In the taped statement, Stephens told the detectives that he ran into appellant and another guy in front of a barbershop about five or six days after the First Step fatal robbery. Appellant informed Stephens “that they had done hit a [robbery].” They had just bought some dope and were trying to distribute it. Appellant further told Stephens that they received $15,000 from the robbery. Stephens was convinced that appellant was speaking about and was involved with the fatal robbery at First Step.
We agree with appellant that the trial court reversibly erred by admitting the repudiated, taped statement of Stephens as past recollection recorded because the State failed to lay the proper foundation for its admission.
The standard of review for the admissibility of evidence is abuse of discretion, limited by the rules of evidence. Padgett v. State, 73 So.3d 902, 904 (Fla. 4th DCA 2011). Unless it qualifies as a statutory exception, hearsay evidence is inadmissible. See § 90.802, Fla. Stat. (2010). Section 90.803(5), Florida Statutes (2010), provides an exception to the hearsay rule for past recollection recorded as follows:
A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made by the witness when the matter was fresh in the witness’s memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted ....
Testimony concerning a recorded recollection “derives whatever force it possesses from the fact that the memorandum is the record of a past recollection, reduced to writing while there was an existing independent recollection.” Montano v. State, 846 So.2d 677, 680 (Fla. 4th DCA 2003) (quoting Volusia Cnty. Bank v. Bigelow, 45 Fla. 638, 33 So. 704, 706 (1903)). When the proper foundation is laid, a taped statement may qualify as a recorded recollection. Id. at 680-81. For it to qualify and be admitted into evidence, the past recollection recorded must be offered by the witness who either lacks a present recollection or has an imperfect present recollection and desires to use a memorandum of a past recollection. Kimbrough v. State, 846 So.2d 540, 543 (Fla. 4th DCA 2003). “The witness must be able to assert now that the record correctly represented his knowledge and recollection at the time of the making.” Id. (citing 3 Wigmore on Evidence §§ 734, 746(2) (James H. Chadbourn rev., 1970)) (emphasis in original); see also 2 McCormick on Evidence § 283 (Kenneth S. Broun, 6th ed. 2009).
*892 The requirement that the witness acknowledge the accuracy of the recorded recollection at trial is consistent with the belief that this exception is justified because the witness, who is subject to cross-examination, “incorporates into [his] testimony by reference the record of past recollection.” Montano, 846 So.2d at 681 (citing Garrett v. Morris Kirschman & Co., 336 So.2d 566, 570 n. 6 (Fla.1976)). Unlike other exceptions to the rule, which obtain their reliability from the circumstances surrounding the making of the out-of-court statement, recorded recollection obtains its reliability based on the credibility of its maker. Id. Therefore, “the law requires the maker to adopt the recorded recollection as his own.” Id. at 682.
Accordingly, we have consistently held that out-of-court statements are inadmissible as past recollection recorded unless the proponent lays the foundation for its admission with testimony at trial that the declarant’s statement was recorded when the described events were fresh in his or her mind and attests to the statement’s accuracy. See Hernandez v. State, 31 So.3d 873, 878-80 (Fla. 4th DCA 2010) (holding that where State witness was unable, or unwilling, to attest to the accuracy of the taped conversation, the State could not introduce it as past recollection recorded; the State called the witness for the primary purpose of impeaching her with her taped conversation); see also Kimbrough, 846 So.2d at 544 (holding detective’s testimony was not sufficient foundation to admit co-defendant’s taped statement and thus, it was inadmissible as past recollection recorded where, despite his likely “convenient amnesia,” co-defendant could not testify either that the statement was his or that it was accurate); Montano, 846 So.2d at 681 (holding a sworn, taped statement given to a deputy was improperly admitted because the witness herself did not acknowledge its accuracy at trial or that she was truthful at the time she made it).
Here, Stephens not only failed to attest to the accuracy of the statement, but he also clearly suggested that it was false. Although Stephens eventually acknowledged giving a taped statement, he could not remember what he said in that statement. He said he only rephrased a statement the detectives made because he needed help on his own unrelated case, which he received. He also testified definitively that he never spoke with appellant about the fatal robbery, as the two men did not like each other and did not speak at all. He denied that hearing his voice on the tape would help his recollection of events and further denied that those events ever occurred. Most importantly, he testified that if the statement were true, he would remember it. At trial, he testified that he did not. Moreover, the detective’s testimony was insufficient to admit this statement. See Kimbrough, 846 So.2d at 544. Thus, the State failed to lay the proper foundation for the admission of Stephens’s statement as past recollection recorded.
The trial court relied on Polite. In that case, although the issue was not preserved for review, the Fifth District expressly disagreed with this court and the Second District’s decision in Smith v. State, 880 So.2d 730, 738 (Fla. 2d DCA 2004), stating that section 90.803(5) does not require the declarant to attest to a statement’s or record’s accuracy before it may be admitted as evidence. Polite, 41 So.3d at 940. Rather, the court held that the exception allows “admission of the statement so long as the state presented evidence (from any source) sufficient to support a finding that the statement was made when the matter was fresh in the witness’ mind, and that it was accurate.” Id. In finding there was sufficient evidence to lay a foundation for *893 admission, the Fifth District looked at “the totality of the circumstances” in the case — • the approach we rejected in Montano— including that the witness swore to it at the time she gave it; that it was given to police an hour after the event while she was consumed with emotions; and that other evidence corroborated it. Id.
We note that two of the primary cases Polite cites in support of its position dictate that whether the witness repudiates the statement or disavows its accuracy is important, if not critical, to its admittance. See Pickett v. United States, 822 A.2d 404, 406 (D.C.2003) (stating that the court should adhere to the rule that the witness must confirm the accuracy of the recorded statement, but interpreting this to mean that unless the witness expressly repudiated the statement at trial, the trial judge “may consider all of the circumstances in finding the requisite confirmation, including the demeanor of the witness in court .... ”); see also State v. Alvarado, 89 Wash.App. 548, 949 P.2d 831, 835-36 (1998) (stating that when examining the totality of circumstances, the court should look at four indications of reliability, the first being whether the witness disavows accuracy).
Here, Stephens repudiated the taped statement in writing before trial, which he acknowledged, and the State read that repudiation into the record during his testimony at trial. The record also reflects that he repudiated the statement on the witness stand. Thus, even under Polite, the trial court was not at liberty to consider the “totality of the circumstances” as it did here. Moreover, contrary to the witness in Polite, who did attest to the accuracy of crucial parts of her statement at trial such as “three men came to her house, kicked the door open, and put a gun to her daughter’s face,” Stephens testified that the entire event described in the statement never even occurred. See Polite, 41 So.3d at 941. Also unlike the witness in Polite, who was consumed with emotion while making the statement an hour after the event, Stephens made his statement nearly three months after the questionable encounter with appellant. Therefore, even if Polite did reflect a correct statement of Florida law regarding past recollection recorded, which we believe it does not, Stephens’s statement was still inadmissible.
In our view, Stephens’s statement was not past recollection recorded; rather, it was an improper attempted impeachment by the State of its own witness. “Generally ... if a party knowingly calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded.” Hernandez, 31 So.3d at 879 (quoting Morton v. State, 689 So.2d 259, 264 (Fla.1997), receded from on other grounds, Rodriguez v. State, 753 So.2d 29 (Fla.2000)). In Morton, the supreme court recognized the dan ger for abuse where a prosecutor calls a witness who previously gave a statement implicating the defendant but who, like Stephens did in this case, has since repudiated that statement. Id. (citing Bateson v. State, 761 So.2d 1165, 1169 (Fla. 4th DCA 2000)). In Hernandez, we held that a taped conversation was improperly admitted as past recollection recorded and that the State called the witness for the primary purpose of impeaching her with the conversation, which the trial court allowed in error. Id. at 878-80. In reaching this conclusion, we found that a review of the witness’s entire testimony reflected that it was useful only for the introduction of her prior inconsistent statements. Id. at 879. As a result, the State did not call her “with any reasonable expectation that she would testify to something helpful to [its] case, *894 aside from the prior inconsistent statement.” Id. at 879-80 (quoting Ruff v. State, 81 So.3d 833, 838 (Fla. 4th DCA 2010)).
Here, the prosecutor was aware that Stephens repudiated the taped statement in writing before trial and that he was uncooperative to the point of refusing to take an oath or answer the prosecutor’s questions during proffer the previous day. Similar to Hernandez, a review of Stephens’s entire testimony reflects that it was useful to the State’s case only for the introduction of the prior inconsistent taped statement, which the trial court admitted in error. The State did not call him with any reasonable expectation that he would testify to anything helpful to its case, other than the prior inconsistent statement. Therefore, the trial court erred in allowing the State to call Stephens for the primary purpose of impeaching him with this inadmissible hearsay evidence.
Finally, we conclude that the error was not harmless. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (harm less error test “places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction”). Stephens’s statement indicated that five or six days after the First Step crime, appellant said he received $15,000 from a robbery. This information was crucial not only because of the proximity in time to the First Step fatal robbery, but also because it correlated with the approximate $20,000 Doherty testified was taken in this case. Further, it gave credence to the testimony of another State witness, convicted felon and admitted drug dealer Jamal Watson, who implicated appellant in the crime by stating he had inquired about purchasing $15,000 worth of cocaine with proceeds from a robbery. This drug purchase inquiry had been called into question on cross-examination by the defense. Moreover, the prosecutor relied heavily on the taped statement during closing argument to support this prosecution. When determining prejudice, appellate courts may look whether the State compounded the error by relying on the evidence in final argument. Killian v. State, 730 So.2d 360, 363 (Fla. 2d DCA 1999). This applies regardless of whether there is a separate objection to the use of the evidence in final argument. Conley v. State, 620 So.2d 180, 183 (Fla.1993).
Other than the circumstantial cell phone evidence, the rest of the State’s case was based primarily on the testimony of Watson and another convicted felon, Winston Henry, who admitted that the $8,000 Cri-mestoppers reward money he received was motivation for coming forward. On this record, the State has not proven beyond a reasonable doubt that the error was harmless.
We next address the admission of the autopsy photographs in order that this error is not repeated on remand. At trial, the State sought to introduce seven autopsy photographs into evidence during the medical examiner’s testimony. Appellant objected, arguing that the photographs were cumulative and would unnecessarily inflame the jury. After examining the photographs, the trial court admitted them into evidence, noting that they were not overly gruesome and that they showed the exit wound. The photographs were then used by the medical examiner to explain the cause of death, which was a slightly downward gunshot wound to the head from a range of six to twelve inches.
We review a trial court’s admission of photographic evidence for an abuse of discretion. Williams v. State, 70 So.3d 726, *895 731 (Fla. 4th DCA 2011). The test for admissibility of photographic evidence is relevancy rather than necessity. Douglas v. State, 878 So.2d 1246, 1255 (Fla.2004) (citing Pope v. State, 679 So.2d 710, 713 (Fla.1996)). However, in order to be admissible, the photographic evidence must be relevant to a material fact in dispute. Stanley v. State, 57 So.3d 944, 949 (Fla. 4th DCA 2011) (citing Boyd v. State, 910 So.2d 167, 191 (Fla.2005)). Autopsy photographs may be admissible when they are required to explain a medical examiner’s testimony, the victim’s injuries, the manner of death, or the location of the wounds. Id. (citing Hertz v. State, 803 So.2d 629, 642 (Fla.2001)). Despite this, autopsy photographs like all other evidence, are inadmissible when “its probative value is substantially outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. (2010).
Here, the State never alleged that appellant physically took part in the crime or that he was even present at the crime scene. The victim’s injuries, manner of death, or locations of the wounds were therefore not at issue. The medical examiner could have adequately testified without them. For that reason, the seven autopsy photographs, which showed gunshot wounds to the victim’s head, were not relevant to prove any material fact in dispute.

Reversed and Remanded.

WARNER and DAMOORGIAN, JJ, concur.