THOMAS, J.
Appellant raises three issues on appeal. He argues the trial court erred by: 1) not holding a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); 2) failing to timely renew the offer of assistance of counsel; and 3) admitting a written statement as a past recollection recorded when the writer did not confirm that she was under oath at the time the statement was written, and neither recalled whether an officer was present, nor whether she wrote a statement at all. We affirm as to the first two issues without further comment. With respect to the third issue, we affirm for the reasons explained below.

Factual Background

Appellant was charged with felony battery arising out of a domestic violence incident in which he physically assaulted his then girlfriend. The victim attempted to have the charges dropped before the trial, but the State decided to pursue its prosecution. The State subsequently requested the court to declare the victim a hostile witness.
During a hearing to address the State’s motion, the victim testified that she could not remember whether she completed a written statement in the presence of law enforcement but, when shown the statement, admitted the signature on the document was hers. She reiterated she could not remember if she had completed the statement in the presence of law enforcement. The State then showed victim pictures of herself and, when asked if law enforcement took the pictures when they came to her house, she replied that she was not sure. She also admitted she wanted the charges dropped, and that she did not want to be there. When asked whether she discussed her testifying and dropping the charges in jail phone calls with Appellant, the victim responded, “I plead *270 the Fifth,” and insisted she did not have to answer. The court informed the victim that she did not have the right to remain silent as to the question and could be held in civil contempt and jailed until she agreed to testify. When the State repeated the question, the victim again replied that she was “not sure.” The victim also admitted she had tried to drop the charges against Appellant, but denied that he had ever asked her to do so. When informed of the existence of recordings of the conversations and warned about the penalty for perjury, the victim responded, “I can’t remember,” when asked the question again. The trial court granted the State’s motion to declare the victim a hostile witness.
As she did during the hearing, at trial, the victim testified she was “not sure” whether law enforcement came to her apartment in June 2011. The victim also testified that she could not remember whether she completed a written statement for law enforcement. After being shown the statement and given a chance to read it, she admitted that the signature on the statement was hers. “I can’t remember” was also her response to questions about whether she signed the statement in the police officer’s presence, how long after police arrived that she gave her statement, and whether she was placed under oath when she gave the statement. She gave the same response to each of the prosecutor’s questions about what happened on the night in question. She admitted, however, that she was the person in the pictures taken by law enforcement. Finally, when asked, “This occurred in Es-cambia County; correct?” she replied, “Yes.”
The investigating officer testified that, upon arrival, he observed that the victim was “very upset ... fearful,” and “had been crying off and on, you could tell from her eyes.” She had swelling on the left side of her face and some redness around her neck, and complained of pain in various parts of her body. The officer also testified that the victim completed a written statement during the 45 minutes he was at the scene. He watched the victim write the statement and denied giving her any facts or suggesting any information. He confirmed the victim was under oath at the time she wrote the statement. After the officer identified the statement, the State asked that it be admitted into evidence.
During the ensuing bench conference, the court stated that the paper statement itself was not admissible because it was not being offered by the adverse party, but that it could be published to the jury. Appellant objected, arguing that the victim “never confirmed” the statement or any of the allegations in it, “so it would just be hearsay when [the officer] reads it.” The court replied that it was not necessary for the victim to acknowledge the contents of the statement when it is past recollection recorded, the victim identified her signature on the document, and the officer testified the statement was given within 45 minutes of his arrival and confirmed it was given under oath. Also, the court explained, the victim testified she did not remember anything about what happened. The court granted the State’s request and the officer read the statement to the jury, which included the victim’s description of Appellant’s physical assault on her. He also testified that what he just read was the statement the victim wrote in his presence and that she wrote it of her own accord, while under oath.
Appellant argues that the trial court reversibly erred by allowing the statement to be published to the jury under the “past recollection recorded” exception to the hearsay rule, because the victim did not *271 testify that she wrote the statement or that the statement correctly represented her knowledge or recollection at the time of making the statement. As explained below, we disagree.

Legal Analysis

A trial court’s ruling on the admissibility of evidence will not be disturbed absent a finding that the trial court abused its discretion. Carpenter v. State, 785 So.2d 1182 (Fla.2001).
Here, the trial court allowed the State to publish the victim’s written statement she prepared for law enforcement. It did so pursuant to the “past recollection recorded” exception to the hearsay rule. Section 90.808(5), Florida Statutes, addresses this exception:
(5) Recorded recollection.—A memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made by the witness when the matter was fresh in the witness’s memory and to reflect that knowledge correctly. A party may read into evidence a memorandum or record when it is admitted, but no such memorandum or record is admissible as an exhibit unless offered by an adverse party.
Here, the State established that the victim wrote a sworn statement during the 45-minute police investigation, which commenced shortly after the victim called 911 for assistance; thus, the details of the incident were “fresh in the witness’ memory.” Also, the details of the assault, of which the victim later claimed to have no recollection, qualifies as “a matter about which a witness once had knowledge, but now has insufficient recollection to enable the witness to testify fully and accurately.” Appellant contends, however, that only the victim could establish that the written statement reflected her knowledge correctly.
Section 90.803(5), however, does not require this. We agree with the Fifth District’s opinion in Polite v. State, which held:
Section 90.803(5) simply requires as a foundation that the statement is ‘shown to have been made by the witness when the matter was fresh in the witness’ memory and to reflect that knowledge correctly.’ The statute does not say that this “showing” must always (or only) be made by testimony from the declarant. A plain reading of the statute would allow admission of the statement so long as the state presented evidence (from any source) sufficient to support a finding that the statement was made when the matter was fresh in the witness’ mind, and that it was accurate.
41 So.3d 935, 940 (Fla. 5th DCA 2010), review granted, 56 So.3d 767 (Fla.2011).
Here, the State presented a recording of the 911 call where the victim is heard requesting police assistance due to a “domestic situation” that involved a threat of harm to her children. The State also presented the officer’s testimony concerning the victim’s physical and mental state when he arrived at the location given by the victim. He took photos of the victim which showed her injuries, which were shown to the jury. The officer also testified that he placed the victim under oath and watched as she wrote and signed her statement identifying Appellant as her assailant and describing the physical assault leading to her injuries. The victim acknowledged it was her signature on the statement and, although she claimed to have no memory of the events described in the statement, she admitted that the incident in question occurred in Escambia County. The State also played recordings *272 of jailhouse phone conversations between Appellant and victim in which Appellant persistently urged the victim to drop the charges and tell the State she would not cooperate in his prosecution.
Taken in its totality, the foregoing evidence was such that the trial court could reasonably find that the victim’s written statement correctly reflected her knowledge of the events that led to her call for police assistance. “A trial court has wide discretion in areas concerning the admission of evidence, and, unless an abuse of discretion can be shown, its rulings will not be disturbed.” San Martin v. State, 717 So.2d 462, 470-471 (Fla.1998). “If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.” Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). Here, the trial court did not abuse its discretion by allowing the statement to be published to the jury.
We acknowledge that Polite is currently under review by the Florida Supreme Court, and that it, and now this opinion, conflicts with the contrary conclusion reached by the Second District in Smith v. State, 880 So.2d 730 (Fla. 2d DCA 2004), and the Fourth District in Kimbrough v. State, 846 So.2d 540 (Fla. 4th DCA 2003). We respectfully disagree with the approach taken by our sister courts in those cases.
The court in Smith held: “In order for a memorandum or record to qualify as recorded recollection, the witness must testify that he made an accurate record of the fact or event or that he is confident that the facts would not have been written unless they were true.” 880 So.2d at 736. In our view, this imposes an additional requirement for admissibility of statements under the statute, one that is not supported by the statute’s plain language and which the Legislature could have added if it so desired.
In Kimbrough, the issue involved a recorded statement by the appellant who testified he did not know if he gave a statement to police, claimed to know nothing about the incident (despite having pled guilty to a lesser-included charge related to the incident), and, “[wjhen the tape was played for him, he denied being able to recognize his voice [and] said nothing would refresh his memory, as he ‘ain’t been in my right mind the last couple of days, I don’t know nothing.’ ” 846 So.2d at 542. Similar to here, the trial court in Kimbrough allowed the tape to be played for the jury after the State presented testimony from the investigating detective, who identified the witness and the witness’s voice on the tape. Id. The Fourth District reversed, “because [the witness] not only had no recollection of giving the statement but could not recognize his voice on the tape,” and the detective’s testimony was not sufficient to overcome this. Id. The court held that the State failed to establish the proper predicate for admitting the statement because the appellant “could not testify either that the statement was his or that it was accurate.” Id. at 544. Again, nothing in the statute limits the “showing” of the statement’s accuracy to the witness herself. Thus, the Fourth District also added to the statute a requirement that is simply not there — a requirement the Legislature could easily have inserted if it desired to do so.
Because of the conflict, however, and the supreme court’s decision to address it, we address whether, assuming allowing publication of the statement to the jury was error, that error was harmless. We hold that it was.
*273 Even absent the victim’s written statement, the State presented sufficient evidence of Appellant’s guilt: The victim’s 911 call in the wake of a domestic incident involving threats to her children; testimony from the investigating officer as to the fresh injuries he noticed on Appellant’s body as well as her distressed mental state; and photographic evidence of the victim’s injuries. In addition, after discussing the incident with the victim, police left with the understanding that Appellant was the assailant. Further, during the jailhouse phone conversations which were played for the jury, there is no discussion of Appellant’s innocence; rather, the conversations center around Appellant, pressuring the victim to drop the charges and to refuse to cooperate with the prosecution. Finally, although the victim claimed to have no recollection of the details of the incident, she never denied that it took place or recanted. Indeed, she acknowledged that “it” occurred in Escambia County.

Conclusion

For the foregoing reasons, we AFFIRM Appellant’s conviction and sentence.
MARSTILLER, J., concurs.
WOLF, J., dissents with opinion.