LEVINE, J.
The issue presented for our review is whether the trial court erred in allowing the state to call a witness for the sole purpose of impeaching her with a prior inconsistent statement given to law enforcement. We find that the trial court erred in allowing the state to call that witness for the purpose of introducing a prior statement that she had since repudiated. Appellant also appeals the trial court’s restriction of defense counsel’s discussion during voir dire of the differing burdens of proof. We find the issue regarding the restriction on voir dire to be without merit. We, however, reverse and remand based on the trial court improperly allowing the state to call a witness solely to impeach her.
In this case, two days after being robbed, the victim identified appellant in a photo lineup as one of two people who beat him up and took forty or fifty dollars from his wallet. At appellant’s trial for robbery and battery, the state first introduced the testimony of a Palm Beach Sheriffs Office (“PBSO”) detective and PBSO deputy regarding the incident.
Appellant was a relative of the state’s next witness, Catherine Fields. Before Fields was to testify, appellant moved in limine to exclude any references to appellant being in a gang, Fields being threatened, or Fields’s tires being slashed in order to prevent her from testifying. The trial court granted this motion. Fields had been previously taken into custody after the state’s request for and the issuance of a writ of bodily attachment, due to her failure to respond to a subpoena for her testimony. As such, Fields testified via closed circuit television, and the jury was told that this was as a convenience to the court. The state suggested putting Fields on a delay so the parties could prevent “all of her comments about gang membership and being threatened.”
Before Fields testified, the parties and the trial court wanted to place on the record Fields’s reason for not wanting to testify. Fields told the trial court that she did not want to testify because she “feared for [her] life and [she did not] remember anything.” Fields then testified that she was at a cookout on the date of the robbery and appellant was at the cookout the entire time. Fields said that she did not remember a fight that evening, nor did she remember giving law enforcement a written statement. Fields told the trial court that the written statement that was faxed to her was not her statement.
The trial court granted the state’s motion to treat Fields as a hostile witness. *128 The trial court asked the state whether it had a witness that was “prepared to put this statement in her hand” to which the state responded that the PBSO deputy would do so.
When the trial recommenced in front of the jury, Fields testified that it was not her signature on the statement and that she did not remember meeting with the deputy to give a statement. Fields stated she did not remember seeing two men beat a man or take his money. Further, Fields stated that she did not remember looking at a photo lineup containing appellant. If the deputy were to say he remembered showing Fields such a lineup, it would not refresh Fields’s recollection.
Finally, Fields stated that the signature on the photo lineup was her name, but did not look like her handwriting as it was not the way she writes. At this juncture, the state recalled the PBSO deputy. The deputy testified that he recognized Fields as being the same person he spoke to about the case, and that he recognized Fields’s written statement. He also identified his signature on the document. The state, at this point, attempted to admit the statement taken of Fields by the deputy. Based on the deputy’s testimony that Fields wrote out and signed the statement in the deputy’s presence, the trial court, over appellant’s objection, admitted into evidence the written statement. When the state sought to introduce the photo lineup, appellant stated, “I’m going to object to the witness in general as they can’t call a witness for the sole purpose of impeachment.” Further, appellant argued that the state was “impeaching” Fields “through this document.”
The trial court then stated, “I’ll find that the witness was — her testimony was a surprise; the sole purpose of putting her on the stand was not to impeach her, and so I’ll overrule that objection.”
In closing argument, the state read Fields’s statement to the jury. Appellant objected that the state was “posing the statement and photo line-up” as evidence, even though Fields never made an identification of appellant as part of the record. The trial court overruled the objection. The state also stated, “[T]he defendant’s own cousin picked him out in November of 2009, made a sworn statement to the police officer.” During rebuttal, the state stated, “I submit to you, ladies and gentlemen, that beyond any reasonable doubt the defendant’s guilty. Why? His cousin turned him in on November 7th of 2009; that’s why.”
In rebuttal closing argument the state heavily relied on what was in Fields’s statement as well as the photo lineup signed by Fields:
Where the good police work actually does come in is that the officer recalls Catherine Fields; he signed as a witness to her having made those two written documents out on November 7th, 2009 and is now able to come into court and say, “Yeah, I saw her do that; that’s what she said then,” even though today she claims she doesn’t remember anything. Ladies and gentlemen, that’s why people do documents and reports and write things down and sign their name to stuff; so that later on when they can’t remember if they did something, there it is. Beyond any reasonable doubt, Samuel Felton is guilty of robbery, Samuel Felton is guilty of battery; please go back in the jury room, mark the verdict form guilty of both of those counts. I will thank you.
Appellant was found guilty of robbery and battery, and this appeal ensues.
We review the trial court’s “eviden-tiary rulings for abuse of discretion. A judge’s discretion is limited by the rules of evidence and by the principles of stare *129 decisis.” Gregory v. State, 118 So.3d 770 (Fla. June 27, 2013) (citation omitted).
In Ruff v. State, 31 So.3d 833 (Fla. 4th DCA 2010), this court explained:
[ 0]ur supreme court recognized that consistent with federal precedent, a risk of abuse occurs where a prosecutor calls a witness who has previously given a statement implicating the defendant but who has since repudiated that statement. In such cases, the purpose of calling the witness must be examined along with the balancing analysis under federal rule 403 to weigh the prejudice over the probative value of the evidence.
Id. at 837 (discussing Morton v. State, 689 So.2d 259 (Fla.1997), receded from on other grounds, Rodriguez v. State, 753 So.2d 29 (Fla.2000)). “Generally, however, if a party knowingly calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded.” Morton, 689 So.2d at 264.
Further, in determining whether a party’s “primary purpose is to introduce the prior inconsistent statements, a court may consider several factors, including: ‘(1) whether the witness’s testimony surprised the calling party, (2) whether the witness’s testimony affirmatively harmed the calling party, and (3) whether the impeachment of the witness was of de min-imis substantive value.’ ” Ruff, 31 So.3d at 837 (quoting Senterfitt v. State, 837 So.2d 599, 600 (Fla. 1st DCA 2003)).
In the case at bar, the only testimony Fields provided that was useful to the state was her prior inconsistent statement. Fields’s recanted testimony denying knowledge of the statement and photo lineup was not helpful to the state. Despite the finding of the trial court, the state clearly was not surprised by Fields’s recanting of her prior statement to the deputy. Not only was Fields taken into custody and compelled to testify by closed circuit television, Fields told the court before she even testified that she did not remember anything. Finally, one could not find that the impeachment of Fields was of “de minimis” substantive value. The fact that Fields had given a prior written statement to the deputy and initialed a photo lineup identifying appellant was the “centerpiece” of Fields’s testimony. Id. at 838. As in Ruff, “the prosecutor did not call [Fields] with any reasonable expectation that she would testify to something helpful to his case, aside from the prior inconsistent statement.” Id.; see also Bartholomew v. State, 101 So.3d 888, 893-94 (Fla. 4th DCA 2012); Hernandez v. State, 31 So.3d 873, 879-80 (Fla. 4th DCA 2010).
We cannot say that the introduction of the prior inconsistent statement was harmless error beyond a reasonable doubt. The state argued in rebuttal that the evidence against appellant was “beyond any reasonable doubt” because appellant’s own cousin, Fields, turned in appellant on the day of the incident. Several times, the state pointed to the fact that appellant’s own cousin previously gave a statement and initialed a photo lineup for the deputy as indicative of the strength of its case. See Bleich v. State, 108 So.3d 1132, 1134 (Fla. 5th DCA 2013) (error in calling witness for the sole purpose of impeaching with prior inconsistent statement was “compounded” where the state referenced “the content of the statement during closing argument as if it was substantive evidence” of defendant’s guilt).
Accordingly, we reverse appellant’s convictions and remand for a new trial.

Reversed and remanded.

WARNER and GROSS, JJ., concur.