COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges AtLee and Malveaux
Argued by videoconference


TREVELL MAURICE SAUL

                                                MEMORANDUM OPINION* BY
v.        Record No. 1433-20-2                  JUDGE RICHARD Y. ATLEE, JR.
                                                     NOVEMBER 15, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
R. Michael McKenney, Judge[1]

Danny Zemel (The Krudys Law Firm, PLC, on briefs), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted appellant Trevell Maurice Saul for assault

and battery in violation of Code § 18.2-57.  Saul argues that the trial court erred in allowing the

victim's written statement to the police to be read into evidence.  He also claims that the evidence

was insufficient to sustain the conviction.  For the following reasons, we affirm the trial court's

judgment.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  In doing so, we discard any of appellant's conflicting evidence, and regard as true all

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge McKenney sentenced Saul and signed the final order.  Judge Designate Harry T. Taliaferro, III, presided over the trial and ruled on the issues now on appeal.

credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

Brittany Levere contacted the Lancaster County Sheriff's Office at 7:14 a.m. on July 21, 2020, following an incident involving Saul. Levere reported the incident and provided a written statement to the responding officer, Deputy D.W. Ferrell.

Levere testified at trial that Saul came to her house on the morning of July 21, 2020, before she left for work. Levere stated that she and Saul had a conversation but denied that either of them became angry or yelled. After she thought Saul had left, Levere went to lock the front door and encountered Saul in her living room. Levere claimed that Saul "grabbed" her and they fell onto a chair and "were wrestling from there," but she denied that Saul "attacked" her. When Levere went to lock the door and encountered Saul, she was carrying pepper spray. She did not use it, and she explained that it fell when Saul grabbed her. Levere did not recall Saul yelling in her face or threatening her or her family; she also did not recall telling Deputy Ferrell that Saul punched her repeatedly in the face and head. She acknowledged that she sustained injuries, but she testified that her injuries were minor, consisting of scratches. Levere testified she did not recall writing the statement she gave to Deputy Ferrell, but acknowledged it was made in her handwriting. Levere also said that she did not include any false statements in the written account she gave the police.

On cross-examination, Levere testified that she was "distraught" when she wrote the statement and that she did so only to obtain a protective order against Saul. She claimed that she did not intend to pursue criminal charges against Saul. She agreed that her emotions could have affected her recollection of the incident. Levere testified that, after reflecting further on the incident, she felt that the statement did not accurately represent what happened.

On redirect examination, the prosecutor asked whether Levere clearly remembered what happened on July 21, 2020. Levere responded, "Not, like everything. Like, I honestly didn't remember writing anything." The Commonwealth then moved to have Levere read her written statement into the record as a past recollection recorded. Saul objected, asserting that the accuracy of the statement was not adequately demonstrated. The trial court overruled the objection and granted the Commonwealth's motion. Levere then read her written statement, as follows:

> I was at my home in my bed when the subject came to my house at 5 a.m. He said we need to talk and woke me up about gossip that was not true. He was high off of cocaine. So regardless of whether you say anything wrong or not, he cannot comprehend. He began yelling in my face and threatening me and my family. He said he thinks I'm playing with him when I was just sitting there getting straight for work. He acts like he was going outside. I sat there, continued brushing my teeth. Then I proceeded up the hall to lock my door. He was hiding in my living room. He accused me of getting something to hurt him when I was just going to lock the door behind him, that's when he attacked me. I did not even have the chance to defend myself. He snuck attacked me. The chair broke is where he attacked me. He punched me in the face repeatedly and in my head. I was assaulted by Trevell Saul.

When Levere spoke with Deputy Ferrell, she indicated that she wanted a protective order.[2] Deputy Ferrell took photographs of Levere, depicting scratches on her neck, lip, and hand, and a photograph of a broken chair in her house. Levere acknowledged that the photographs accurately depicted the injuries she sustained from Saul "grabbing [her] and falling into the chair and wrestling on the ground." Deputy Ferrell stated that Levere "wanted to write the statement" she gave to the police.

---

[2] The record before the Court does not reflect whether Levere ultimately obtained a protective order against Saul.

II. ANALYSIS

A. *Admission of the Written Statement*

On appeal, Saul asserts that the trial court erred by allowing Levere to read into evidence the written statement she made to the police. Saul argues that Levere's written statement was hearsay evidence and did not qualify for admission under the past recollection recorded exception to the hearsay rule. We do not address the merits of the hearsay issue because we conclude that any potential error in admitting the written statement was harmless.[3]

"[E]videntiary errors are subject to non-constitutional harmless error review." *Jones v. Commonwealth*, 71 Va. App. 70, 91 (2019). Code § 8.01-678 sets out the standard for non-constitutional harmless error as follows:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

"Error is harmless when we are able to conclude 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not

---

[3] For a written statement to qualify as a "past recollection recorded,"

> (1) the witness must have had firsthand knowledge of the event; (2) the written statement must be an original memorandum made at or near the time of the event, when the witness had a clear and accurate memory of it; (3) the witness must lack a present recollection of the event; and (4) the witness must vouch for the accuracy of the written memorandum.

*Abney v. Commonwealth*, 51 Va. App. 337, 346-47 (2008). The Commonwealth argues that Saul's objection in the trial court related only to the fourth element, and therefore, he did not preserve for appeal arguments relating to the other elements. While we question whether some of Saul's arguments were in fact preserved, we do not reach that issue because it is not the best and narrowest ground on which to resolve the appeal. *See Dietz v. Commonwealth*, 294 Va. 123, 134 (2017) (noting that an appellate court decides cases "on the best and narrowest grounds available" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

substantially swayed by the error.'" *Schmuhl v. Commonwealth*, 69 Va. App. 281, 308 (2018) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)).

Saul contends that without the written statement, the intent element necessary for assault and battery is not met, and thus it cannot be harmless error. We disagree. To sustain a conviction for battery, the Commonwealth must prove that there is "an intention to do bodily harm—either an actual intention or an intention imputed by law." *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "The unlawful intent may be imputed if the touching is '"done in a rude, insolent, or angry manner."'" *Id.* at 331 (quoting *Adams*, 33 Va. App. at 469).

Independent of the written statement, however, Levere's trial testimony is sufficient to support a conviction for misdemeanor assault and battery. Despite denying that he yelled at or threatened her, she felt the need, in her own home, to take pepper spray with her to lock the door even after she thought he left. While refusing to characterize it as an attack, she admitted that Saul "grabbed" her in a manner that caused them to fall into a chair, breaking it, and then they wrestled on the ground. *See Parish*, 56 Va. App. at 331-32 (holding there was "ample evidence" to prove assault and battery where a "visibly angry" defendant "grabbed" the victim's shoulder and forced her to face defendant). She suffered injuries during this scuffle. This testimony is sufficient to demonstrate an unwanted touching done in a rude and insolent manner. Thus, any potential error resulting from the admission of the written statement as a past recollection recorded is harmless.

B. *Sufficiency of the Evidence*

Saul asserts that the trial court erred by finding the evidence was sufficient to convict him of assault and battery. Saul claims that the trial court implicitly credited Levere's written

statement while discrediting her trial testimony and that she could not simultaneously be both a credible and non-credible witness.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Parish*, 56 Va. App. at 329 (quoting *Adams*, 33 Va. App. at 468). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Id.* at 330 (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). "One cannot be convicted of assault and battery without an intention to do bodily harm—either an actual intention or an intention imputed by law." *Id.* (quoting *Adams*, 33 Va. App. at 468). "The unlawful intent may be imputed if the touching '"is done in a rude, insolent, or angry manner."'" *Id.* at 331 (quoting *Adams*, 33 Va. App. at 469).

Levere testified that she thought Saul had left her house and was going to lock the door when he grabbed her. When he did so, she fell onto a chair, and then the pair wrestled with each other. Levere's testimony suggests Saul took her by surprise. Levere suffered injuries during

the scuffle. This testimony was sufficient to sustain Saul's conviction for battery because it demonstrates an unwanted touching done in a rude and insolent manner. *Id.* Likewise, the testimony that the force caused Levere to fall onto a chair and that Saul continued to wrestle with her on the floor, causing injury to Levere, was sufficient to sustain a conviction for assault and battery. *See Kelley v. Commonwealth*, 69 Va. App. 617, 629-30 (2019) (holding evidence sufficient to prove battery where defendant grabbed the victim's face and attempted to force a kiss on her). Levere's written statement was more explicit, asserting that Saul yelled and threatened her during their conversation, then "attacked" her and punched her repeatedly in the head.

Saul argues that the trial court erred by crediting Levere's written statement over her trial testimony. Although there were inconsistencies between the two accounts concerning the details of the incident, at minimum both accounts establish that during a disagreement Saul "grabbed" Levere, a scuffle followed, and Levere suffered visible, even if minor, injuries. "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* at 626. "Consequently, as Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)); *see also Morrison v. Commonwealth*, 37 Va. App. 273, 281 (2002) ("The fact finder is not required to believe all parts of a witness' testimony but may accept only some parts as believable and reject other parts as implausible."). "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient" to support the conviction "[i]f the trier of the facts" bases its decision "upon that testimony." *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). We find no error in this case because the trial court was permitted to resolve the inconsistencies.

## III.  CONCLUSION

For the foregoing reasons, we find that the trial court did not err in allowing Levere's statement to be read into evidence and that the evidence was sufficient to prove Saul's guilt beyond a reasonable doubt, and we affirm his conviction.

*Affirmed.*